ALONZO A. WRIGHT, APPELLEE, v. THOMAS HOCTOR, MAYOR, ET AL., APPELLANTS.*

FILED FEBRUARY 13, 1914.  No. 18,069.

1. **Constitutional Law: MUNICIPAL CORPORATIONS: CONTRACTS: STATUTORY PROVISIONS: UNION LABOR CLAUSE.** The city of South Omaha let certain contracts for public work under section 178, ch. 17, laws 1901, which as since amended (laws 1909, ch. 17, sec. 123) reads: "That in all cities governed by this act, where work is performed upon the streets, sewers, boulevards, or in parks, etc., or by virtue of any contract with any person, company or companies, or corporations, for such cities, shall be done by union labor and be paid for at the rate of two dollars ($2) per day; provided, that when skilled labor is employed by the city said labor shall be paid the current scale of union wages; provided, that eight hours shall constitute a day's labor. And it shall be the duty of the city clerk or other person or persons authorized

*Rehearing denied. See opinion, p. 355, post.

Wright v. Hoctor.

to advertise for bids for contracts for city work to insert these provisions in said advertisement."

The plaintiff, a taxpayer, brought this suit to enjoin the said city officials and the defendants, who were contractors, from proceeding with said work, and that the contracts should be canceled. *Held*:

(a) That the said union labor clause is void, because it is undemocratic in its plan, in conflict with the constitution of the state, and contrary to the spirit of our republican form of government.

(b) In effect the said provision excludes the unskilled laborer from the work to which he is entitled, and compels the taxpayer to sustain the burden of an arbitrary rate not based upon the actual value of labor, and without reference to the going wages of the time, place and kind of labor to be performed.

(c) It takes the private property of the taxpayer without due process of law, and is in violation of section 3, art. I of the Bill of Rights.

(d) It undertakes to support a privileged class at the expense of the taxpayer, and puts upon the latter a burden not contemplated by the laws of the state.

(e) It takes the property of one person and gives it to another without attempting just compensation.

(f) The contracts are not let under such terms as to admit of competition, and there is a disregard of that part of section 128, ch. 17, laws 1909, which provides that the mayor and council "shall award such contract to the lowest responsible bidder of the class (of material) so designated."

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*H. C. Murphy, S. L. Winters* and *John-P. Breen,* for appellants.

*W. R. Patrick,* contra.

HAMER, J.

The district court for Douglas county enjoined the mayor, the members of the city counsel, and the city clerk, of South Omaha, their successors in office, and certain other defendants. The purpose of the injunction was to prevent the carrying out of certain contracts relating to

the labor to be performed upon the streets, sewers, etc., of South Omaha. The petition shows that the plaintiff as a taxpayer brought the action to obtain an injunction against the city officials of South Omaha restraining them from carrying on public work under a large number of paving contracts, which are described in the petition, and from paying for such work. There are 18 paving contracts in 18 paving districts and 12 grading contracts in 12 grading districts. They are all described in the plaintiff's petition, and it is set forth that the contracts had been awarded to the several defendants who are joined with the city officials as defendants in the case. It was prayed that the court adjudge the contracts to be illegal and that they be canceled. The chief ground alleged is that the statute provides the following in all cities of the South Omaha class: "That in all cities governed by this act, where work is performed upon the streets, sewers, boulevards, or in parks, etc., or by virtue of any contract with any person, company or companies, or corporations, for such cities, shall be done by union labor and be paid for at the rate of two dollars ($2) per day; provided, that when skilled labor is employed by the city said labor shall be paid the current scale of union wages; provided, that eight hours shall constitute a day's labor. And it shall be the duty of the city clerk or other person or persons authorized to advertise for bids for contracts for city work to insert these provisions in said advertisement." Laws 1909, ch. 17, sec. 123. It is claimed in the petition that, because of this statute and the insertion of a reference to it in the advertisement for bids as the statute itself provides, competition in respect to the proposed improvements was restricted to such contractors as were able to employ *union labor,* and that fair and free competition in respect to the proposed improvements was destroyed; that the rate of wages so prescribed and required to be paid is excessive and unreasonable, and would increase the cost of improvements to the plaintiff and to other taxpayers of the city; that said contracts are therefore null and void. The ground was taken by the plaintiff that the union labor

provision of the statute was unconstitutional because of the provision for hiring only union labor; also, because of fixing eight hours for a day's work. It was also alleged that certain of the contracts were fraudulently procured, but the details need not be set out for the reason that the case is disposed of on other grounds. The appeal to this court is from the judgment of the district court for Douglas county making the injunction perpetual.

It is said in the argument of counsel for the defendants that the city officials, in advertising for bids for the public work specified, drew attention to the said union labor clause, but did so only to comply with the command of the statute, but with no intention on behalf of the city to seek the actual enforcement of the law. As evidence of that fact it is claimed that since the original enactment of the said labor union clause more than $1,000,000 worth of public work has been done upon the streets, sewers, parks, boulevards and other public works in the said city of South Omaha, and that during all that time no attention whatever had been given to the enforcement of the said labor union clause. It is further claimed that there was no union labor procurable, and that the kind of laborers ordinarily employed to do such work are not unionized laborers; that ever since the enactment of the statute the city has taken no affirmative action in the matter of its enforcement, and has made no demand upon the officers having charge of the public work, or the contractors, that this provision be enforced; that this provision has not resulted in any increase in the bids nor deterred bidders from bidding, and that all contractors who have done any contracting with the city, including those mentioned in the petition, have disregarded said provision and have not considered it in making their bids or carrying out their contracts, and that as far as the results are concerned the business has been carried on just as though the statute was not in force.

It is also set up by the defendants that there are no laborers organized in the union covering the class of labor to be performed under the contracts set out in the plain-

tiff's petition, and that, there being no such class of laborers, it is impossible to comply with the statute whether it is valid or invalid.

In the decree the district court found that the union labor provision was unconstitutional and void so far as it required the public work in the city to be done by union labor only; that there was inserted, pursuant to the command of the union labor provision, a notice calling the attention of bidders to the existence of said union labor provision in the statutes; also, that there was inserted a clause which bound the contractor, except Daniel Hannon, to comply with such union labor provision; also, that the different contractors in bidding for the contracts involved in the litigation did not add any amount of money to their respective bids on account of such union labor provision, although it is implied that this might have been done. It was also found that the union labor provision had generally been ignored in the actual performance of such contracts, "but the court nevertheless finds and concludes that the natural tendency of such union labor provision and its insertion in the advertisements calling for bids is to limit and restrict the field of labor and to limit and restrict competitive bidding; and that the presence of said union labor provision in the statutes and the reference to it in the advertisements for public bids to do public work, as found in paragraph two herein, are alone sufficient to render the contracts void."

It is now argued that the provision in the law concerning union labor will make no difference in the cost of improvements. While this may be true, the method proposed is undemocratic. The tendency to exclude bidders by providing that laborers shall belong to a certain restricted class is to prevent competition and increase the probable cost of improvements.

It is argued that the law cannot be unconstitutional for the reason alleged that no man may put his finger upon that section of the constitution which forbids this manner of letting the contract.

The trial judge gave care and study to the preparation of his opinion, and it is deserving of careful consideration.

In *Adams v. Brenan,* 177 Ill. 194, 42 L. R. A. 718, there was a contract let by the board of education of the city of Chicago to one John A. Knisely for the repair of a schoolhouse. Before the making of the contract with Knisely the board of education had entered into an agreement with an organization in the city of Chicago, known as the "Building Trades Council," by which the board of education agreed to insert in all contracts for work upon school buildings a provision that none but union labor should be employed in such work, and that none but union workmen should be employed and placed upon the pay rolls of said board. The board advertised for bids for the construction of a roof on an addition to Bryant's school. In the advertisement it was stated that "none but union labor shall be employed on any part of the work where said work is classified under any existing union." The contractor, Knisely, submitted two bids for the construction of the roof. In the first of these he offered to do the work according to the plans and specifications for $2,090, and to be bound by said condition touching the employment of union labor. In the second bid he offered to do the work "for the sum of $1,900, provided all conditions as to the employment of none but union labor are stricken from the specifications and contract let accordingly." The higher bid of $2,090 was accepted by the board of education. It had the restriction attached to it. The board and Knisely entered into a contract according to the terms of the higher bid. There was a bill filed for a preliminary injunction. The application was denied and the trial court dismissed the bill for want of equity. The supreme court of Illinois said: "The taxpayers are in equity the owners of the fund, and the board can only hold and apply it to legitimate purposes of the trust. The law is established, beyond doubt or controversy, that a bill to enjoin public officers so situated from misappropriating the fund in their charge is a proper remedy for a taxpayer. Courts of chancery will interfere to restrain such authorities

from a misuse of the fund entrusted to them, or its appropriation to a purpose not warranted by law (citing cases)." It appears from the facts stated in the case that the "treaty" of the board of education with the Building Trades Council was for the purpose of calling off a strike. It was claimed that this "treaty" would do away with strikes upon school buildings. Continuing, the court said: "It is plain that the rule adopted by the board and included in this contract is a discrimination between different classes of citizens, and of such a nature as to restrict competition and to increase the cost of work. It is unquestionable that if the legislature should enact a statute containing the same provision as this contract in regard to any work to be done for boards of education, or if they should by a statute undertake to require this board, as the agency of the state in the management of school affairs in the city of Chicago, to adopt such a rule or insert such a clause in its contracts, or should undertake to authorize it to do so, the provision would be absolutely null and void as in conflict with the constitution of the state. If such a restriction were sought to be enforced by any law of the state it would constitute an infringement upon the constitutional rights of citizens, so that the state in its sovereign capacity, through its legislature, could not enact such a provision. (Citing authorities.) There is no more reason or justification for such a contract as this than there would be for a provision that no one should be employed except members of some particular party or church." It is said that the complainant as a taxpayer is not deprived of a remedy for his wrong because neither the contractor nor excluded laborer has questioned the contract. It is also said that there is another ground upon which complainant has an undoubted right to maintain the bill, and that is that the contract tends "to create a monopoly, and to restrict competition in bidding for work." The Illinois supreme court determined that the decree of the trial court in dismissing the bill was wrong, and its decree was reversed.

In *Price v. City of Fargo,* 139 N. W. (N. Dak.) 1054, it was held that, if there is no law requiring competitive bidding nor that the contract be let to the lowest bidder, then the contract need not be let to the lowest bidder, and that where it is awarded to a higher bidder a taxpayer cannot have the contract set aside, unless there is proof of fraud. In that case there was an election for the purpose of voting water bonds to aid in the construction of a filtration plant.

In the case of *City of Atlanta v. Stein,* 111 Ga. 789, it was held: "A municipal corporation, though not required by its charter to let contracts for public work to the lowest bidder, and though clothed as to such matters with the broadest discretionary powers, has no authority to adopt an ordinance prescribing that all work of a designated kind shall be given exclusively to persons of a specified class." In that case it was held that the ordinance cut off the power to fully and freely exercise that discretion which the public good requires the mayor and the general council to exercise in making the contracts.

In *Holden v. City of Alton,* 179 Ill. 318, the city charter required the contracts to be let to the lowest bidder, and it was held that an ordinance like the one in the Georgia case last above cited was illegal, and that it tended to create a monopoly and to impose an additional burden on the taxpayers. In *Holden v. City of Alton, supra,* the ordinance required all contracts for city printing to be be awarded to union shops only, or to such as were able to show the union label.

In *Fiske v. People,* 188 Ill. 206, it was held: "An ordiance requiring the employment of union labor only, upon public improvements, is unconstitutional and void, because an unjust discrimination between classes of citizens, which restricts competition and increases the cost of the work." Of the ordinance in that case it was said: "The requirement that the bidder for doing the work on a public improvement shall agree to hire only members of labor unions in the performance of such work, and that, in all contracts executed by the commissioner of public

works on behalf of the city, the contractor shall agree to hire only members of labor unions, amounts to a discrimination between different classes of citizens, and lays down a rule which restricts competition and increases the cost of work. Under our constitution and laws, any man has a right to employ a workman to perform labor for him, whether such workman belongs to a labor union or not, and any workman has a right to contract for the performance of labor irrespective of the question whether he belongs to a labor union or not."

In *Miller v. City of Des Moines,* 143 Ia. 409, 23 L. R. A. n. s. 815, it was held that it was an abuse of the council's discretion to give a contract to union labor alone, under an ordinance, because of the tendency of such a contract to create a monopoly, and because it involved a denial of the equality of right and opportunity to which every bidder is entitled.

In *Lewis v. Board of Education,* 139 Mich. 306, it was held that the board of education had no power to require contractors constructing public buildings to employ union labor exclusively; that to do so tended to increase the cost of the taxpayer.

In *State v. Toole,* 26 Mont. 22, 55 L. R. A. 644, it was held that, as the statute required the contract to be let to the lowest responsible bidder, a municipal contract could not be rescinded because the man who got the contract would not employ union labor.

In *Paterson Chronicle Co. v. City of Paterson,* 66 N. J. Law, 129, there was a resolution requiring the work to be done by union labor, and the court held the ordinance requiring union labor to be invalid. The law of New Jersey then required such contracts to be let to the lowest bidder.

In *Davenport v. Walker,* 57 App. Div. (N. Y.) 221, it was held that a provision requiring work to be done by union labor without legislative sanction would be declared void because it increased the cost to the taxpayer. The same thing was also held in *People v. Edgcomb,* 112 App. Div. (N. Y.) 604.

In *Marshall & Bruce Co. v. City of Nashville,* 109 Tenn. 495, 71 S. W. 815, it was held that the ordinance providing for union labor was void because it interfered with competitive bidding.

In *Goddard v. City of Lowell,* 179 Mass. 496, it was held, in a case where the statute required the contract to be let to the lowest bidder, but the council sought by ordinance to require the printing to bear the union label, that the council could not require the work to be done by union labor.

In *People v. Metz,* 193 N. Y. 148, 24 L. R. A. n. s. 201, the supreme court of New York holds that the statute regulating the hours upon public works by a municipality is constitutional, and not in violation of the federal constitution, and that there is no unconstitutional discrimination where persons employed on public works are prohibited to labor more than eight hours, while others employed by private citizens are not restricted in the duration of the hours of labor. The decision is based upon the proposition that, as a municipality is but an arm of the state and is carrying out the work of the state, and as no one has a right to work for the state except upon the terms that the state may see fit to employ him, therefore no one may complain because the state may discriminate as it sees fit.

In the case of *Goodrich v. Mitchell,* 68 Kan. 765, 64 L. R. A. 945, it was held that the law, which provided that those who have served in the army and navy and who have been honorably discharged therefrom shall be preferred for appointment in every public department and upon the public works of the state and in the cities and towns thereof, was constitutional on the ground that office holding is a *political privilege,* and not contrary to the fourteenth amendment of the federal constitution, and that the power of the legislature is supreme in respect to appointment, save as the constitution has limited it. To the same effect was the decision of the supreme court of Iowa in *Shaw v. City Council of Marshalltown,* 131 Ia. 128. In that case the statute of Iowa provided for the pref-

erence of honorably discharged soldiers and sailors of the civil war in any employment in the public service.

In the instant case Judge Kennedy, who heard the case in the district court, held that it was *ruled* by *Woodruff v. Welton*, 70 Neb. 665. In that case it was held that a resident taxpayer, without showing any interest or injury peculiar to himself, might enjoin illegal expenditures by a public board or officer. There was a provision in the law that the county board should prepare estimates of books and blanks and stationery required for the use of county officers during the coming year, and that there should be a brief advertisement published in a newspaper of the county stating the probable gross number of each item of books, blanks and stationery required by such county during the following year, and inviting bids therefor. There was a failure to comply with that provision, and it was held that any resident taxpayer might enjoin the illegal expenditure which would follow from the letting of such contract. The taxpayer should have the right to object to the manner of letting any contract for public work which places, or may place, an unjust burden upon his property. To the same effect is *Tukey v. City of Omaha*, 54 Neb. 370.

It is maintained in the brief of defendants that the digging in the streets contemplated by the contracts is common labor. If that be true, that is an additional reason why the contract should not exclude it in favor of union labor. The common people should be given an opportunity to perform common labor. They are interested in the question as wage-earners. They need the labor for the support of themselves and their families. If they are denied a chance to support themselves, they suffer directly, and the state is injured by their loss; the taxpayer is liable to be compelled to pay more taxes than he otherwise would, and he therefore sustains an injury; and lack of prosperity to both wage-earner and taxpayer brings loss and lack of prosperity to the state. The thing done is contrary to the spirit of our government, which contemplates the best that may be honestly and fairly done for all its citizens. The

courts are not without a duty to perform. That duty includes the protection of all the people under the law from the ill-advised action of those who would despoil them of their rights or their property.

An illustration of the proper way to treat the wrongs inflicted on the taxpayer is furnished by the case of *Malette v. City of Spokane,* 68 Wash. 578. The legislature of the state of Washington, in fixing the hours of labor upon public works, passed an act declaring "eight hours in any calendar day shall constitute a day's work done for the state." There was also a prior act providing that work done for any political subdivision of the state should "be performed in workdays of not more than eight hours each." The city of Spokane by ordinance declared: "Hereafter eight (8) hours in any calendar day shall constitute a day's work on any work done for the city of Spokane." By the second section of the ordinance it was provided: "Hereafter all laborers employed by the day on municipal work, either directly by the city, or by contractors, subcontractors, individuals, partnerships, associations, or corporations, on all work for the city, shall receive and be paid not less than $2.75 for a calendar day's work of eight (8) hours." On March 10, 1910, the city passed an ordinance providing that "all work done by common laborers for the city of Spokane, or for any contractor, subcontractor, or other person doing work by contract, or otherwise, for the city of Spokane, shall receive the sum of three dollars ($3) per day for eight hours' labor." "On March 25 the city council passed an ordinance calling for the improvement of Sixteenth avenue, by constructing a sewer therein, creating an assessment district, and providing for the payment of the cost thereof by special assessments to be levied against the property benefited. A contract was thereafter let to one James C. Broad, who finished the work under his contract." At the time the contractor under this ordinance was compelled to pay $2.75 to $3 a day for common labor. The going wages for that class of labor ranged from $1.85 to $2.25 for a ten-hour day. There

95 Neb. 23

was an appeal by a taxpayer. He based his contention on the proposition that the ordinance was unreasonable, and contrary to public policy, and that it was in contravention of the constitution of the state and of the constitution of the United States, because it took property without due process of law. The supreme court said: "Abandoning legal phraseology, the concrete question, put in plain English, is whether a city can improve the property of a citizen, either upon his petition or against his will, and tax an arbitrary sum therefor that puts the cost unreasonably above the cost of like work if done through the instrumentality of a private agency. * * * Here we have an ordinance saying, not that a sum no less than the going wage for like labor shall be paid, but that a fixed sum irrespective of going wages or the worth of the employee shall be paid. In the instant case, the wages paid are from 50 to 90 cents higher for eight hours than are wages paid in private employment for like labor for ten hours. To hold this arbitrary resolution to pay an excess of wages to be reasonable, reference to some fixed principle of law must be had. It would seem that no such reference can be had. * * * If a council can pay $3 when the current wage is $2.25, they can fix the price of commodities entering into the construction of a public work and provide that material must be purchased of certain persons or firms when the same commodity might be had of others at a less price. Under such a system there would be no limit to the 'discretion' of the city officers, who to serve personal or political ends might burden the taxpayer beyond the point of endurance. In cases of this character it is well to recur to fundamental principles for our guidance, one of the most salutary of these being that all municipal ordinances shall be reasonable, to the end that a favor to one citizen shall not find sustenance in the burden of another."

A favor to one citizen ought not to be sustained by the burden placed upon the shoulders of another. Therefore in this case the unskilled laborer who can dig in the streets ought not to be cut off from that work by a provision

which calls for union labor; neither should the taxpayer be compelled to pay a higher rate because only union labor can be employed by the contractor. And there should be no fixed rate of wages provided by the legislature, without reference to the going wages for that kind of work at the time and place where it is to be performed. The contracts were not let so as to admit of competition. Section 128, ch. 17, laws 1909, contains a provision that contracts of this character shall be awarded "to the lowest responsible bidder of the class (of material) so designated." The manner of letting these contracts would take the private property of the taxpayer without due process of law, and is in violation of section 3, art. I, of the Bill of Rights.

We are of the opinion that the evidence fully sustains the findings and judgment of the district court on behalf of the plaintiff; that the so-called union labor provision found in the law governing cities of the South Omaha class is unconstitutional and void; that the tendency of such provision and its insertion in the advertisements calling for bids is to limit and restrict the sources of labor and to limit and restrict competitive bidding; that the contracts are void so far as they have been so declared by the judgment of the district court; and that the plaintiff is entitled to the relief given him.

The judgment of the district court is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.

The following opinion on motion for rehearing was filed April 17, 1914. *Rehearing denied:*

HAMER, J.

The two motions for a rehearing in this case, supported by briefs, require consideration. Counsel are entitled to much credit for the labor performed. The opinion, *ante,* p. 342, heretofore adopted declares the statute unconstitutional, not because of its provision that "eight hours shall constitute a day's labor," but because the provision

to employ only union labor "is to limit and restrict the sources of labor and restrict competitive bidding." The statute does away with competitive bidding, because it provides that the work "shall be done by union labor," and this clause cuts off the employment of common laborers and the use of common labor in the construction of work performed upon the streets, sewers, boulevards, and parks in cities of the class of South Omaha. Section 3561, Rev. St. 1913, provides: "Ten hours shall constitute one day's labor, so far as it concerns laborers and mechanics, throughout the state."

In the opinion nothing is said concerning the fact that eight hours shall constitute a day's labor, and section 3561, above cited, disposes of the question as to the number of hours that may constitute a day's labor in this state. Having determined that the statute was unconstitutional because it did away with competitive bidding, we need not discuss the eight-hour provision. The writer of the opinion undertook to show what these cases referred to in the brief for a rehearing had decided, and to allege that they were not adverse to the rule announced in the opinion. There is a short statement as to each case. These cases are not cited for the purpose of showing that they are in point, but to distinguish them and their provisions as compared with the instant case.

In *Malette v. City of Spokane*, 68 Wash. 578, it appears that a rehearing was granted, and a new opinion is found in 137 Pac. 496. This provides, among other things, that, if the work is done by contract after the reception of bids, it is not required that the contract shall be let to the lowest bidder. This new opinion is a consideration of the subject as applied to "common labor," and does not refer to union labor or to any restricted class of labor. The legislature of the state of Washington passed an act providing that "eight hours in any calendar day shall constitute a day's work on any work done for the state or any county or municipality within the state (Rem. & Bal. Code, sec. 6572)." It was also provided that "all work done by contract or subcontract on any building or improvements or

work on roads, bridges, streets, alleys, or buildings for the state, or any county or municipality within the state, shall be done under the provisions of this act. * * * And for this purpose, this act is made a part of all contract, subcontracts or agreements for work done for the state or any county or municipality. (Rem. & Bal. ˙ Code, sec. 6573)." Later there was another amendment re-enacting the number of hours constituting a day's work, and limiting the number to eight hours for each work day (Rem. & Bal. Code, sec. 6575). This act contained a penalty providing that all contracts for such work "might be canceled by the officers of the state, county, or city having supervision of the work, in case of a violation of the statute (Rem. & Bal. Code, sec. 6576). It was further provided in the act that it should be the duty of such officers to incorporate in all such contracts stipulations, "as provided for in this act, and to declare any contract canceled, the execution of which is not in accordance with the public policy of this state as herein declared (Rem. & Bal. Code, sec. 6577)." Following the foregoing acts of the legislature of the state of Washington, the city of Spokane passed an ordinance on August 24, 1909, providing that "eight hours in any calendar day shall constitute a day's work on any work done for the city of Spokane." It was provided in section 2 of the ordinance: "Hereafter all laborers employed by the day on municipal work, either directly by the city or by contractors, subcontractors, individuals, partnerships, associations or corporations, on all work for the city, shall receive and be paid not less than $2.75 for a calendar day's work of eight hours." Afterwards, on March 10, 1910, the city of Spokane passed another ordinance providing "that hereafter all work done by *common laborers* for the city of Spokane, or for any contractor, subcontractor or other person doing work by contract or otherwise for the city of Spokane, shall receive the sum of three dollars ($3) per day for eight hours' labor." The act and the ordinance nowhere mention union labor. Apparently they are gotten up for the benefit

of the "common laborers" doing work for the city of Spokane.

We have carefully examined the authorities cited in the briefs, and we are unable to find a reason for reaching a different conclusion than that we announced in the opinion. The motions for a rehearing are therefore

OVERRULED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.