GREEN *v.* CITY OF ATLANTA *et al.; et vice versa.*

1. The court did not err in holding section 1 of the ordinance in question to be valid as against the contention that it is void because unreasonable.
2. The court did not err in holding the ordinance and election held thereunder valid as against the contention that they were void because based on an unconstitutional statute,—that the statute was unconstitutional on the ground that a referendum is contrary to a republican form of government. This question can not be determined in a court of equity, and is not a justiciable question; on the contrary, it is a matter to be determined by the legislature.
3. Section 215(b) of the act amending the charter of the City of Atlanta is not void on the ground that it deprives the plaintiff of "due process of law."
4. The court did not err in rendering a judgment holding said section of the ordinance valid as against article 3, section 7, paragraph 8, of the constitution of Georgia (Civil Code (1910), § 6437), which provides: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof."
5. The court did not err in holding the second section of the ordinance invalid on the ground that the mayor and council were without authority to abandon or surrender the power conferred on them.

Nos. 5283, 5284.    SEPTEMBER 13, 1926.

---

Constitutional Law, 12 C. J. p. 791, n. 19; p. 794, n. 23; p. 795, n. 31; p. 865, n. 91, 96; p. 866, n. 1; p. 1255, n. 27.

Municipal Corporations, 28 Cyc. p. 278, n. 68 New; p. 456, n. 9; p. 457, n. 17.

Statutes, 36 Cyc. p. 1018, n. 79; p. 1020, n. 85.

Equitable petition. Before Judge Ellis. Fulton superior court. January 15, 1926.

Victor E. Green as a citizen and taxpayer, in behalf of himself and other taxpayers, brought suit against the City of Atlanta, the mayor and general council, the finance committee of council, and the comptroller of the city, alleging in substance as follows: On or about December 2, 1925, an election was held in the City of Atlanta, in which the people voted on the question of the adoption or the rejection of "an alleged ordinance providing for an increase in the salaries paid to officers and members of the fire department." The returns in said election were something more than five thousand votes in favor of the proposed increase and more than two thousand votes against such increase. A copy of said ordinance, in so far as is material, is as follows: "Section 1. That the regular members of the Atlanta Fire Department shall receive the sum of $141.66-2/3 per month for their first year's service, $150.00 per month for their second year's service, $158.33-1/3 per month for their third year's service, $166.66-2/3 per month for their fourth year's service, and thereafter $175.00 per month for their service, being the amount of salary paid by the United States Government to mail carriers in the Postal Service in the City of Atlanta. Section 2. Should the salaries paid said mail carriers be increased in the future, the salaries of the members of the Atlanta Fire Department shall be accordingly increased." There are two hundred and ninety-two men, including officers, in the fire department, whose compensation is purported to be increased by said ordinance, and it will require an increase of $117,-000 yearly to pay such extra compensation. The total amount now paid by the city for the salaries of the fire department is $508,000. Said ordinance is illegal and void, for the following reasons: It is unreasonable, in that it arbitrarily provides that the members of the fire department shall never receive less pay per month than the salaries paid by the United States Government to its mail carriers, and that if the salaries paid to the mail carriers be increased the salaries of the members of the fire department shall be increased accordingly, but it does not provide that the salaries shall be lowered if the pay of the mail carriers be lowered; there is no similarity between the services rendered by mail carriers and the services rendered by the fire department; the resources of the city

and of the United States are vastly different; and the salaries should be regulated not only by the worth of the services rendered but also by the ability of the employer to pay. The ordinance is unreasonable, because it purports to make the change in the salaries of the fire department depend upon Federal legislation instead of legislation by the City of Atlanta. Said election was held in pursuance of "an alleged amendment to the charter of the City of Atlanta, which is found in the Acts of 1913, pages 507 to 604; the particular portion relating to such election being section 215(b)." The ordinance and the election held thereunder are void, because the same are based on a void act of the legislature. Section 215(b) is void, because: (1) It undertakes to delegate legislative authority to a body not legislative in character and not consisting of elected representatives, but only of those who happen to vote, and because such method of making laws does not provide for any investigation by persons who vote for or against the law. Section 215(b) introduces an entirely new principle of government which is not found in the original charter of Atlanta, or in any act amendatory thereof, by providing for direct legislation by the people of the City of Atlanta without the concurrence of the city council or the legislature, and even providing that an "act of the city council" could be repealed in a popular election. (2) The act is void, because it is in conflict with article 1, section 1, paragraph 3, of the constitution of the State of Georgia (Civil Code (1910), § 6359), which provides: "No person shall be deprived of life, liberty, or property, except by due process of law." (3) Section 215(b) is unconstitutional and void, because it violates article 3, section 7, paragraph 8, of the constitution of the State of Georgia (Civil Code (1910), § 6437), which provides: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." The title of the act is, "An act to amend an act establishing a new charter for the City of Atlanta approved February 28, 1874, and the several acts amendatory thereof, and for other purposes;" and the subject-matter of section 215(b) is different from what is expressed in the title of the act and is not germane to the amending of statutes only providing for mayor and council form of government.

The act of the General Assembly purporting to amend the char-

ter of the City of Atlanta, found in Georgia Laws of 1913, pages 507 to 604, inclusive, consists of 217 sections as well as a number of subsections.  Section 215 provides that "the foregoing acts [sections] shall not become effective nor of force unless a majority of the qualified voters of the City of Atlanta [voting in the special election] shall vote in favor thereof."  Section 215 then provides how the question of adopting the foregoing section shall be submitted to a popular vote of the people, but that section also provides that "the result of the said election shall not affect the several sections of this act, which provide that the provisions of said act shall become a law when approved by the Governor."  Also, that the result of said election shall not affect the provisions of section 215(a), which submits to a vote of the people the question of vesting in the recorder's court of the said city the power of imposing a fine of $500 or imprisonment or labor in the public works of the city for a period not more than sixty days, "and *section 215(b), which provides for the submission to the people the question of incorporating into the ·charter of said city the principle of the initiative, referendum, and recall."*  The section attacked by the petitioner in this case, 215(b), in so far as necessary to be quoted, is as follows:  "Whenever ten per cent. of the registered voters, as disclosed by the registration 'sheets of the last preceding general municipal election, shall request, in a petition filed in the office of the clerk of council of said city, the submission of an ordinance or resolution, the substance of which is incorporated in said petition, for adoption by vote of the people, an election shall be called therefor within thirty days after same has been read in council.  If at said election said resolution or ordinance receives a majority of the votes cast, it shall become operative and can not be thereafter repealed except by an election similarly called.  *Provided,* however, if the mayor and general council adopt the resolution or ordinance so petitioned for, then no election shall be called."  The remainder of the section provides the rules and regulations under which the question of adoption shall be submitted to the people.

Other allegations in the petition are immaterial to the decision, and need not be stated.  The trial judge rendered judgment as follows:  "The within application for injunction coming on for a hearing, it is ordered that same be denied and the restraining

order is revoked, except that section 2 of the ordinance, with reference to increases according to increases in pay of postal employees, is enjoined." The plaintiff excepted to so much of the judgment as refused an injunction as to the entire ordinance. The defendants excepted to that part which held section 2 of the ordinance invalid.

*A. H. Davis,* for plaintiff.

*J. L. Mayson, C. S. Winn,* and *Troutman & Troutman,* for defendants.

GILBERT, J. 1. The first contention with which we will deal is that the ordinance is void because the salaries named therein are unreasonable. The complainant at the hearing introduced evidence tending to show the amount of money necessary to pay the salaries of the firemen of Atlanta for the year 1925, and the proposed apportionment sheet for the year 1926, "now being considered by the finance committee." Also evidence tending to show the value of fixed assets of the city as well as liabilities, including bonded indebtedness. On the evidence thus submitted the trial judge held that the salaries named in the proposed ordinance are reasonable. From the evidence before us we are unable to say that the court erred in thus holding. Moreover, from the briefs submitted, it does not appear that the plaintiff attached much importance to the assignment of error on this point. As a general proposition, the courts of other States have held that the legislative body of a municipality, "within a reasonable and fair compass," may fix the wages paid to city employees and prescribe rules with reference to such services; and it is said in connection with the above that "with such grant of power there is always the implied duty to keep within the bounds of what is reasonably fair and proper, and particularly bearing in mind that the council is a body chosen to represent and subserve the best interests of the community at large." For an elaborate discussion of this question, reference is made to the case of Wagner *v.* Milwaukee, 177 Wis. 410 (188 N. W. 487), and the authorities there cited. In this connection the argument is made that such salaries are unreasonable because based on the salaries paid to mail carriers by the United States Government. We will not argue or dwell upon this point, because under our view it is unnecessary. We think it unnecessary because we hold that the reference made in the ordinance to

the salaries paid to mail carriers will be treated as surplusage and as adding nothing to the ordinance. The language of the ordinance in that respect, after stating the amount of salaries to be paid monthly for such service is, "being the amount of salary paid by, the United States Government to mail carriers for postal services in the City of Atlanta," and thus it amounts to merely a statement that the amount provided in the ordinance is the same as that paid to mail carriers by the United States Government. What has been stated here applies only to section 1 of the ordinance. Section 2 will be dealt with hereafter.

2. The next contention is that the ordinance and the election held thereunder are void, because the same are based on a void act of the legislature; that section 215(b) of the act amending the charter of the City of Atlanta is void, because it undertakes to delegate legislative authority to the people at large, and not to elected representatives forming a body legislative in character. As we construe this contention, it is similar to the contention made in Pacific States Telephone &c. Co. *v.* Oregon, 223 U. S. 118 (32 Sup. Ct. 224, 56 L. ed. 377). The attack in that case was on the statute passed by the legislature of the State of Oregon and submitted for approval to a popular vote of the people of that State; thus the question was as to the constitutionality of what is known as the "initiative and referendum." The opinion was written by Mr. Chief Justice White, and the opening sentences of the opinion are as follows: "We premise by saying that while the controversy which this record presents is of much importance, it is not novel. It is important, since it calls upon us to decide whether it is the duty of the courts or the province of Congress to determine when a State has ceased to be republican in form and to enforce the guarantee of the constitution on that subject. It is not novel, as that question has long since been determined by this court conformably to the practice of the government from the beginning to be political in character, and therefore not cognizable by the judicial power, but solely committed by the constitution to the judgment of Congress." In the case of Kiernan *v.* Portland, 57 Ore. 454 (112 Pac. 402, 37 L. R. A. (N. S.) 332), will be found an elaborate discussion of the question, in which many authorities are cited. Thus it will appear as well settled, that the question of the power of a State or municipality to submit a referendum like

that indicated in section 1 of the ordinance is not a justiciable question, but rests solely within the wisdom and judgment of the legislative branch of the government. As to the wisdom and desirability of such legislation, the courts have no concern. In the language of Mr. Justice Brewer: "Here the single question is one of power. We make no laws. We change no constitutions. We inaugurate no policy. When the legislature enacts a law, the only question we can decide is, whether the limitations of the constitution have been infringed upon."

It should be borne in mind that we are still dealing with section 1 of the ordinance, because there are at least two kinds of referendum. One, in which the legislation has been approved by the legislative body, the only question submitted to a popular vote being whether or not such legislation shall be vitalized; that is, whether it is to become effective and put into operation. The other is where the legislation is submitted in all its bearings and details for approval to a popular vote without legislative approval. Section 1 of the ordinance falls within the first classification; at least we assume that fact from the pleadings and the evidence. The ordinance is attached as an exhibit to the petition, and the following words immediately precede section 1: "Be it ordained by the Mayor and General Council of the City of Atlanta, as follows:" This State has been committed for many years to that character of referendum which submits to the electorate the question whether legislation framed and approved by the General Assembly shall become operative. The practice has invariably been that the General Assembly prescribed the main scheme of the legislation, and submitted only the minor details to be decided by popular vote. *Southern Railway Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665); *Richter* v. *Chatham County,* 146 *Ga.* 218 (91 S. E. 35); Cavanaugh *v.* Gerk (Mo.), 280 S. W. 51; 99 Central Law Journal, 298, and annotations. Instances of such delegation of power are found in our local option and fence laws, numerous municipal charters submitted both as a whole and as to separate parts, road laws, change of county site, the issuance of bonds, the formation of school districts, the levy of school tax, and the like. The constitution of Georgia declares (article 1, section 1, paragraph 1, Civil Code (1910), § 6357): "All government, of right, originates with the people, is founded upon their will only, and is instituted solely

for the good of the whole." Again, in section 5 of the same article, paragraph 1, it provides: "The people of this State have the inherent, sole, and exclusive right of regulating their internal government." Civil Code (1910), § 6393. And paragraph 2 of section 5 of article 1 (Civil Code (1910), § 6394) reads: "The enumeration of rights herein contained . . shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed." This court has said: "Under our form of government, where the people rule, and where the representatives in the legislature are but the agents of the people and act alone for them, it would seem that, when the wishes of the people as to whether a proposed act should become a law can be clearly ascertained by an election, this mode would be consonant with the genius and form of our government. The fundamental law of the State, and even particular sections thereof, is, and has been, left to be determined by a vote of the people. If the constitution, the organic law of the State, has been made to depend upon the vote of the people, it is not easy to perceive why a local law, an act affecting a particular community, should not be determined by a vote of the people of that locality. It has been the practice in this State for more than half a century to leave local questions, such as the location of county sites, the building of public houses, municipal charters and amendments thereof, to the vote of the people to be affected thereby. Such laws have never been thought to be unconstitutional. See Cooley, Const. Lim. 748, 749." *Caldwell* v. *Barrett, 73 Ga.* 604. Decisions of other States apparently taking a contrary view are generally found to concern facts of a different nature, and falling within the second classification above stated. At any rate, they are not binding authority here. .

3. It is also contended that section 215(b) is void, because it is in conflict with article 1, section 1, paragraph 3, of the constitution of the State of Georgia (Civil Code (1910), § 6359), which provides: "No person shall be deprived of life, liberty, or property, except by due process of law." If the act of the General Assembly furnishes the taxpayers notice and hearing before the act becomes operative, it follows that there is no lack of due process. The act is not open to this objection. The taxpayers are presumed to qualify, to inform themselves as to the merits of the proposed issues, and to exercise their rights as voters in all elec-

tions submitted to them. Where they have this opportunity, there is no lack of "due process of law" which would nullify proposed legislation of this kind. *Beckham* v. *Gallemore*, 147 *Ga.* 323, 325 (93 S. E. 884). Counsel for the plaintiff cites, for a contrary view, *City of Sandersville* v. *Bell*, 146 *Ga.* 737, 746-747 (92 S. E. 218), and *Shippen Lumber Co.* v. *Elliott*, 134 *Ga.* 699 (68 S. E. 509). We do not think these cases are in point. The *Sandersville* case dealt with a charter provision conferring power upon the municipality to provide by ordinance for paving its streets, in which the charter did not provide for notice to taxpayers or hearing as to the reasonableness or unreasonableness as to the assessment proposed to pay for such pavement. The *Shippen* case had reference to an amendment to the charter of the Town of Ellijay, and it was held that the act amending the charter was in violation of the due-process clause of the constitution of the State of Georgia, on the ground that it failed to provide notice and hearing to the property owners before assessing or raising the valuation of unreturned property to its true market value.

4. It is also contended that section 215(b) of the act is unconstitutional and void, because it violates article 3, section 7, paragraph 8, of the constitution of Georgia (Civil Code (1910), § 6437), which provides: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." The title of the act is as follows: "An act to amend an act establishing a new charter for the City of Atlanta, . . and the several acts amendatory thereof, and for other purposes." We do not think the act subject to this criticism. In a long series of decisions, beginning at a very early date, this court has decided that all doubts as to the constitutionality of an act will be resolved in favor of its validity, and also that under the usual caption to acts providing for municipal charters, such as the one now under consideration, great liberality is to be allowed, and the legislation may include any provisions in the act which are germane to the general subject embraced, and this would include any matters within the usual powers conferred upon a municipality. *Allen* v. *Tison*, 50 *Ga.* 374; *Mayor &c. of Macon* v. *Hughes*, 110 *Ga.* 795, 804 (36 S. E. 247); *Mayor &c. of Americus* v. *Perry*, 114 *Ga.* 871 (40 S. E. 1004, 57 L. R. A. 230); *Welborne* v. *State*, 114 *Ga.* 793, 821 (40 S. E. 857); *Ogles-*

*by* v. *State,* 121 *Ga.* 602 (49 S. E. 706) ; *Town of Poulan* v. *A. C. L. R. Co.,* 123 *Ga.* 605 (4) (51 S. E. 657) ; *Banks* v. *State,* 124 *Ga.* 15 (52 S. E. 74, 2 L. R. A. (N. S.) 1007) ; *City of Carters- ville* v. *McGinnis,* 142 *Ga.* 71 (82 S. E. 487, Ann. Cas. 1915D, 1067). The caption in this case gives notice to the public that the act consists of an amendment to the charter of the City of At- lanta, and from this notice persons interested should expect to find among the provisions of the act any or all matters germane to the general subject, and within the usual powers conferred upon a municipality. Referendums of this character are now so common that citizens must anticipate them in the conduct of municipal af- fairs. Such being the case, we hold that the referendum in ques- tion is germane to the general subject embraced in the act amend- ing the charter of Atlanta, and therefore constitutional and valid.

In *Mayor &c. of Savannah* v. *State ex rel. Greene,* 4 *Ga.* 26, 38, Judge Lumpkin referred to the history of this clause in the follow- ing language : "I would observe that the traditionary history of this clause is, that it was inserted in the constitution of 1798 at the instance of General James Jackson, and that its necessity was suggested by the Yazoo act. That memorable measure of the 17th of January, 1795, as is well known, was smuggled through the legislature, under the caption of an act 'for the payment of the late State troops,' and a declaration in its title, of the right of the State to the unappropriated territory thereof, 'for the protection and support of its frontier settlements.' "

5. In the cross-bill of exceptions the defendants complain that the court erred in not holding the entire ordinance valid, and in enjoining the mayor and council from putting into operation sec- tion 2. In providing in section 2, that, "should the salaries paid said mail carriers be increased in the future, the salaries of mem- bers of the Atlanta Fire Department shall be accordingly in- creased," the municipality undertook to delegate to the Federal Government the power to increase the salaries of employees of the City of Atlanta, without regard to the reasonableness of such pay, and without regard to the available income of the city. Moreover, such increase may occur without the knowledge or intent of such Federal authorities. Indeed, it is altogether unlikely that in fix- ing the pay of mail carriers in the City of Atlanta, such Federal authorities would even be cognizant of the fact that in so doing

their action would affect the salaries of the firemen of Atlanta. In the charter of the City of Atlanta, the General Assembly of Georgia conferred the following power: "The legislative department of the city shall be vested in the mayor, board of aldermen, and board of council." Code of the City of Atlanta, § 72. And the charter also empowered the mayor to veto the resolutions, orders, or ordinances of the board of council; or board of aldermen. City Code, § 61. When the mayor and council submitted to a referendum the question of allowing future salaries of the firemen to be fixed by the Federal government, this was tantamount to a surrender of the legislative power conferred in section 72 of the charter.

The City of Atlanta can not abandon its legislative power and confer it upon the Federal authorities. To do so would render it impossible for the municipality to modify or alter the salaries, which, under the ordinance, must be paid according to rates arbitrarily raised without even the intention of the Federal authorities to do so. Compare *Macon Street R. Co.* v. *Macon,* 112 *Ga.* 782 (38 S. E. 60). We know of no case where such an ordinance has been held valid. The City of Atlanta has only such powers as have been constitutionally conferred by the General Assembly, and these powers the city is without authority to surrender to the national government, and thus deny to the city the right to control its own internal affairs. In cases much less extreme, this power has already been denied in this State as well as in other States. It is argued, in favor of the validity of section 2, that many laws of this State have been enacted to take effect according to the Federal census. It is true that quite a number of statutes have been enacted by the General Assembly with a proviso that they were to operate only in localities shown to possess a certain population according to the United States census. We do not think that this is in any sense recognizing the validity of Federal legislation. This amounts to no more than restricting the operation of such laws to territory of a certain population, and providing as a means of determining the population that the census of the United States shall be resorted to as binding evidence. The taking of the Federal census is not legislation, although the taking of the census is itself in pursuance of Federal legislation. In *City of Atlanta* v. *Stein,* 111 *Ga.* 789 (36 S. E. 932, 51 L. R. A. 335), the headnote is as

follows: "A municipal corporation, though not required by its charter to let contracts for public work to the lowest bidders, and though clothed as to such matters with the broadest discretionary powers, has no authority to adopt an ordinance prescribing that all work of a designated kind shall be given exclusively to persons of a specified class. Such an ordinance is ultra vires and illegal, because it tends to encourage monopoly and defeat competition, and all contracts made in pursuance thereof are void." In the opinion it is stated: "The doctrine of all these cases, viz., that, as a general rule, there should be no judicial interference with the exercise by municipal bodies of the discretion with which they are by law invested, is sound and well recognized, but this rule is not absolutely without exception. The whole subject was given thorough consideration in the case of *Atlanta* v. *Holliday,* 96 *Ga.* 546 [23 S. E. 509], in which, after stating that, 'Under the charter of the City of Atlanta, the discretion of its municipal authorities, within the sphere of their powers, is very broad, and this discretion is to be exercised according to the judgment of the corporate authorities as to the necessity or expediency of any given measure,' it was held that, 'where these authorities are acting within the scope of their duties and exercising discretionary power, the courts are not warranted in interfering, unless fraud or corruption is shown, or the power or discretion is being manifestly abused to the oppression of the citizen. In a case where it clearly appears that a threatened act on the part of the municipal authorities will result in such oppression, a court of equity may interfere to prevent the wrong.' The vice of the ordinance now under consideration is that it cuts off the power to fully and freely exercise that very discretion which the public good requires the mayor and general council to exercise in making contracts. It effectually ties their hands and prevents their availing themselves of opportunities to make advantageous agreements in behalf of the city, which it is idle to say would not be presented were this ordinance out of the way. We can not, therefore, escape the conclusion that in adopting this ordinance the mayor and general council exceeded their authority." See also Wright *v.* Hoctor, 95 Neb. 342 (145 N. W. 704, 52 L. R. A. 728, Ann. Cas. 1915D, 967).

It is true that in section 215(b) of the act in question the following language is found: "If the same [proposed legislation]

receive a majority vote of the people and become effective, then same can only be repealed by a majority vote of the qualified voters at a regular municipal election." We do not think this language contradicts the opinion which we have expressed above, that the act and the ordinance enacted thereunder undertake to surrender the power of the municipal authorities. The mayor and the legislative body of a municipality must have unfettered opportunity to perform their official duties according to law and their oaths of office, for the best interest of the people at large.

*Judgment affirmed on both bills of exceptions. All the Justices concur.*