## 25070. BARFIELD *v.* CITY OF ATLANTA.

862

Decided July 9, 1936.

*Clint W. Hager, C. N. Davie, J. F. Kemp,* for plaintiff.

*J. C. Savage, C. S. Winn, Bond Almand,* for defendant.

Broyles, C. J.   D. L. Barfield brought suit against the City of Atlanta, alleging that during the years 1932, 1933, and until June 27, 1934, he was employed by the city as a driver in the fire department, at a salary of $185.50 per month; that the defendant deducted certain amounts from the compensation that was due the plaintiff under the rate of pay fixed by law, amounting to $721.19, as shown by itemized statement attached to the petition, which deductions were illegal and made without the consent of plaintiff. He prayed judgment for this amount with interest.   The defendant, answering, alleged "that in January of 1932, the City of Atlanta faced a financial crisis.   Due to a world-wide financial and business depression the revenue of the City of Atlanta was materially curtailed.   It became necessary that rigid economies be practiced in every department of the city government.   Salary reductions or contributions became necessary, or as an alternative a material reduction in the personnel.   With reference to the fire department, the City of Atlanta was faced with two alternatives, one to reduce the personnel and the other to obtain contributions from the salaries of all city employees.   Both alternatives were submitted to the officers and members of the fire department, including the plaintiff herein.   It was unanimously decided by the officers and members of the fire department that rather than reduce the personnel that each member of said department would make the same salary contribution that was required of other non-school employees of the city.   The plaintiff herein participated in said deliberations and agreed to the plan.   Thereafter the plaintiff was paid each and every month the salary due and earned, and each and every check bore the following endorsement: 'In full

for salary————to————.' When the plaintiff herein was discharged for cause, as hereinbefore set forth, he was paid in full for his services up to the date of his discharge, and endorsed and cashed a check which was tendered him in full and complete settlement, accord and satisfaction. Said check bore the following endorsement, which was agreed to and signed by the plaintiff herein: 'In full for salary June 16, 1934—June 30, 1934.'" By amendment the city set out its revenue for the years 1930 to 1934, inclusive, showing a great decrease in revenue, and alleged "that due to the falling off in revenue of the city that it became necessary that its expenditures be curtailed to correspond with its reduced income. The city therefore found it necessary, in its economy program, not only to suspend public improvements, expenditures for capital outlay, reduce its personnel, but also to reduce the salaries of those remaining upon the pay rolls of the City of Atlanta. Defendant shows that the plaintiff herein waived, by an expressed written contract, his right to receive any money in addition to the sum paid him; for that there appears upon the back of each check delivered to the plaintiff the following written contract and agreement: 'In full for salary————to————. If correct, endorse and deposit in any bank for collection. If incorrect, return at once to the paymaster who signed this check. By the endorsement of this check the payee acknowledges the payment in full settlement of the account for which this check is drawn, and also acknowledges that any deductions from the full amount due are made in accordance with the payee's written request. The endorsement must agree exactly with the payee's name on the reverse side of this check.' That the foregoing agreement was signed and delivered by the plaintiff herein upon each and every pay-day during his employment with the City of Atlanta." The answer then sets out the ordinance on which the plaintiff relies, a part of which provides that firemen shall not receive less pay per month, than U. S. postmen serving the city receive from the United States Government; alleges that the plaintiff has never received less pay than such postmen; and pleads, as a defense to the suit, waiver, estoppel, accord and satisfaction.

After introduction of evidence, the court, without the intervention of a jury, rendered judgment for the defendant. The plain-

tiff's motion for new trial was overruled, and on this judgment he assigns error.

In 1913 the General Assembly of Georgia passed an amendment to the charter of the City of Atlanta, providing that when ten per cent. of the registered voters shall petition the council to pass a specific ordinance, an election by the people shall be called within thirty days after the petition has been read in council, and if the ordinance receives a majority of the votes cast, it shall become operative and can not thereafter be repealed except by an election similarly called. Ga. L. 1913, pp. 507, 599, sec. 215(b). The evidence shows that pursuant to this charter provision an election was called in 1925, and the voters of the city adopted an ordinance fixing the salary of city firemen, the monthly salary of plaintiff under such ordinance being $185.50; that from January 1, 1932, to June 30, 1934, when the plaintiff was discharged for cause, his salary was reduced in the same proportion as other firemen, such reduction being necessary because of the financial condition of the city; that the plaintiff received his pay twice a month; that he remained in the employment of the city for two and a half years during the period of reduced pay, and did not sue or make any claim on account of the reduction of his salary until after he was discharged; that on the back of each pay-check was the following, to which the plaintiff agreed and which he signed: "If correct, endorse and deposit in any bank for collection. If incorrect, return at once to the paymaster who signed this check. By the endorsement of this check the payee acknowledges the payment in full settlement of the account for which this check is drawn, and also acknowledges that any deductions from the full amount due are made in accordance with the payee's written request. The endorsement must agree exactly with the payee's name on the reverse side of this check. In full for salary [stating the time covered by the check]. D. L. Barfield."

The plaintiff contends that he was a public officer whose salary was fixed by law; that the reduction thereof was unauthorized and against public policy; that the agreement he signed was not a waiver or an estoppel; and that the ordinance fixing his salary was held valid in *Green* v. *Atlanta,* 162 *Ga.* 641, 645 (135 S. E. 84). The ruling in the *Green* case, that "the court did not err in holding section 1 of the ordinance in question [which fixed the

amount of the salaries] to be valid as against the contention that it is void because unreasonable," shows that it was based on the financial condition of the city *at that time,*. and was not a holding that the salaries fixed would be reasonable under any and all circumstances. In the opinion the court said: "The complainant at the hearing introduced evidence tending to show the amount of money necessary to pay the salaries of the firemen of Atlanta for the year 1925, and the proposed apportionment sheet for the year 1926, 'now being considered' by the finance committee.' Also evidence tending to show the value of fixed assets of the city as well as liabilities, including bonded indebtedness. *On the evidence thus submitted* the trial judge held that the salaries named in the proposed ordinance are reasonable. *From the evidence before us* we are unable to say that the court erred in thus holding. . . As a general proposition, the courts of other States have held that the legislative body of a municipality, 'within a reasonable and fair compass,' may fix the wages paid to city employees and prescribe rules with reference to such services; and it is said in connection with the above that 'with such grant of power *there is always the implied duty to keep within the bounds of what is reasonably fair and proper, and particularly bearing in mind that the council is a body chosen to represent and subserve the best interests of the community at large.'*" (Italics ours.) Indeed, so much of the entire ordinance as was held not to be void was so held only as against some certain, specific objections urged against it. No part of the ordinance was held to be valid under any and all circumstances, and the second section thereof was held to be invalid for a specific reason. The record in the instant case shows that the financial condition of the city was very materially changed since the trial of the *Green* case, supra; that the revenue of the city from 1930 to 1934 had greatly decreased; and that when the reduction in the plaintiff's pay began on January 1, 1932, there was a deficit in the city treasury of $1,148,822.16. The evidence clearly showed that the city had then no feasible way of paying the salaries maintained during prosperous times, certain portions of the city's income being appropriated by law to the schools, and its ability to levy taxes being limited by statute; that salaries of other city employees and officials were likewise reduced; that all improvements were either stopped entirely or greatly curtailed;

that if reduction in salaries had not been made, the city's credit would have been jeopardized, and it would have become necessary to curtail essential services, such as protection against fire, police protection, schools, and sanitation, to the extent that the lives, health, property, and general welfare of its citizens would have been placed in great danger. The plaintiff's pay was reduced on an average of $24.04 per month, leaving him an average monthly salary of $161.46 during the period of the city's financial depression. Inquiry as to the reasonableness of this reduction and of the salary paid may be made by the court in the light of the changed conditions proved. In City of Shreveport v. Shreveport Ry. Co., 38 Fed. (2d) 945, it was held that a prior decision holding an ordinance of the city valid was not res judicata under changed conditions. The court said: "There is no doubt that an ordinance, reasonable as applied to conditions existing at the time of its adoption, may become unreasonable by a change in conditions. . . We conclude that the decision in Sullivan v. Shreveport, supra, is not res adjudicata in this case if conditions have sufficiently changed to render the ordinance unreasonable and unnecessary." There is nothing in the *Green* case, supra, which holds that the ordinance in question can not be declared unreasonable and invalid if its provisions, in the light of changed conditions, violate a State law. The charter of the City of Atlanta is an act of the General Assembly; and it provides that the annual expense of the city shall be so restricted as not to exceed the annual income of the city, and that annual estimates of income and expenditures shall be made to carry out this purpose. The city, in reducing salaries, was complying with this provision of the charter, and it would have violated this provision had it failed to bring the expenditures within the revenue of the city.

The written acknowledgment by the plaintiff that his pay-checks were in full settlement of the salary due him, and that "any deductions from the full amount due are made in accordance with the payee's written request," was not made without consideration. The evidence showed that on account of the enormous deficit with which the city was confronted it would have been necessary to reduce the personnel of the fire department if salaries had not been reduced. The plaintiff might or might not have been one of those losing employment if the personnel had been reduced. He wished

to avoid this possibility, and did avoid it by accepting a reduction in salary. There is no evidence that he was forced to sign the agreement, that any one threatened to discharge him if he did not sign it, or that he signed it under any duress. He could have resigned his position at any time he chose to do so. The case of Steele *v.* Chattanooga, 84 S. W. (2d), 590, is, in principle, on "all fours" with the case now under consideration. In that case deductions were made from the salaries of firemen and policemen, and after the plaintiff (a fireman and policeman successively) was discharged he sued to recover the amount of these deductions. The court said: "During the time the deductions were made from complainant's salary, the City of Chattanooga, on account of the depression, was unable to collect a large percentage of its assessed taxes, resulting in material loss of revenue and necessitating a curtailment of expenditures in the various departments. . . All policemen and firemen of the city [whose salaries were fixed by law], including appellant, . . received and accepted, without protest or objection of any kind, the reduced salaries as contemplated. The charge is made that appellant signed the reduction agreement because of duress and under threat of losing his position if he did not do so, but he is unable to designate any official of the city who made such threat or brought any compulsion to bear upon him. Such compulsion as existed arose from economic conditions and was not personal or official. We are of opinion, rather, that the agreement was voluntarily entered into in order to obviate the dismissal of any of the personnel because of the reduced appropriation for the department. It is apparent that, if the agreement to reduce salaries had not been made, the city would have had no other course open to it except to reduce the number of men employed; but no one was told that if he, individually, refused to sign the agreement he would be discharged. This was not compulsion or duress, nor was it a threat. It was merely a frank and truthful statement of existing conditions and the two alternatives open to the city and its employees. The question squarely presented, therefore, is, can appellant recover under the charter salary provision, in spite of the reduction agreement, absent duress, compulsion, or threat?" The court held that though the employee's salary was fixed by statute, his agreement to accept a reduced amount was not made under such duress as would

impair the validity of his agreement, "where reduced city revenues necessitated such agreements between the city and its employees whose salaries were fixed by statute or discharge of some of such employees;" and that the plaintiff was "estopped from recovering the amount of reduction from the city after having accepted reduced compensation for services performed." The court further said in that case, that holdings to the contrary in other jurisdictions "are based upon considerations of public policy which we do not find present here, for the reason, among others, that the contract is executed rather than executory. There is now no possibility that the public good will be in any wise affected; the service of this particular employee having been terminated."

The foregoing ruling is more particularly applicable to the instant case, because of a statute in Georgia providing that "A person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." Code, § 102-106. See also *Mutual Life Insurance Co. v. Durden,* 9 *Ga. App.* 797 (2) (72 S. E. 295). It does not appear that the agreement which the plaintiff signed in the instant case was adverse to the public interest, or in violation of public policy. "The rule supported by the weight of authority is that a municipal officer who continues to hold his office for the full term, and receives his compensation at a fixed rate without dissent, thereby waives his right to claim a higher rate named in some act or ordinance." 43 C. J. 702, 907, §§ 1173(5), 1660(e). In Lehman *v.* Toledo, 48 O. App. 121 (192 N. E. 537), where it was held that the agreement to accept less than the sum fixed by law was a valid agreement, the court said: "Each [employee] signed the agreement with full knowledge of the facts and of the financial condition of the city, and that in determining its budget for the year the city was relying thereon." In Brigham *v.* New York, 191 App. Div. 866 (182 N. Y. Supp. 145), an action to recover the difference between the fixed salary and the reduced salary, the court held that after the employee accepted the reduced salary he could not recover the difference; and that this was true regardless of civil-service rules designating the grades of employees and rates of pay. See also McCarthy *v.* McGoldrick, 266 N. Y. 199 (194 N. E. 406) ; Ryan *v.* N. Y. City, 177 N. Y. 271, 279 (69

N. E. 599); Wagoner *v.* Philadelphia, 215 Pa. 379 (2) (64 Atl. 557).

The first special ground of the motion for new trial alleges that the court erred in admitting evidence as to the revenue of the city; and ground 3 alleges that the court erred in admitting the following evidence: "I am city comptroller. My duties are to keep the financial records of the city; to keep a record of all cash that comes into the city and all money that is paid out. I occupied that position prior to 1930 and up to the present time. The total receipts of the city for previous years were: for the year 1930, $9,721,178.38; for the year 1931, $9,383,834.31; for the year 1932, $8,671,898.72; for the year 1933, $8,379,169.79; for the year 1934, $8,879,106.78. I couldn't say exactly the total reductions in salaries to firemen beginning with 1932 and extending through to the present time; but it is and has been around $700,000 a year based on base salaries, and the reductions I would say for 1932, 1933, and 1934 will be over $300,000. There was a deficit of $1,148,822.16 in the city treasury January 1, 1932. A deficit means that according to the fixed expenses of the city and the operation of the city, that the receipts lacked $1,148,822.16 of meeting the fixed expenses in the operation of the city government; in other words, the city not only had no money the first day of January, 1932, but owed that much money, and had no money to pay with. Since that time the deficit has increased, and has never decreased. Beginning in 1932 and extending through 1934, in order to get the city's expenses down to the size of its revenue and income, there has been quite a drastic cut in the personnel of the city. In 1932 or 1933 a man was employed specifically to go through the payrolls of the city to see if certain eliminations could be made. There was a good number of them made. As to public improvements, such as streets, sidewalks, sanitary improvements, etc., the city has practically since 1932 abandoned all capital outlays for almost everything, except in one or two instances, which amounted to very little. The reductions have been uniform throughout the entire city government, except the school department, and they made their own reductions. If the city were compelled to restore this $300,000 to the pay-roll of the fire department, in my opinion the only places it could come from would be from the pay-rolls of the city, by reason of the fact that there are certain fixed charges upon

an indebtedness that has to come first, and then, under the law, the city has to give to the schools thirty per cent. of its revenue, and then of course there are certain fixed expenses, such as running the departments of the city government, that would have to be maintained; and the only way I see we could raise any money at all would be from the pay-rolls of the city. If the $700,000 is the annual pay-roll, and a reduction was made in the personnel instead of salaries, the reduction in force in the fire department would be around 40 per cent., which would cause an increase in fire-insurance rates, because they are based on the ability to combat the fire hazards. If the remainder of the city employees have to absorb this $300,000 loss, it would be necessary to reduce pay-rolls about 30 per cent. in addition to the 15 per cent. cut already made. From my knowledge of the city's financial condition, it would have to come from pay-rolls, either in the reduction of salaries or reduction of personnel. I have been with the city thirty-one years in the same department I am in now. I am constantly in conference with and observe the work that is being done by every department. If the man-power was reduced to absorb this, I would say it would materially affect the service rendered by the city. I don't think of anything I could add that would throw any light on this situation." The evidence objected to in these two grounds was admissible, not because it determined directly whether the defendant owed the plaintiff, but because it was in proof of the allegations of the answer, to which no demurrer was filed; and since similar evidence had been introduced to show that the salaries were reasonable at the time of the adoption of the ordinance on which plaintiff relies (*Green* case, supra), it was material evidence to show the reasonableness of the reduction in salary and the unreasonableness of the ordinance under the changed conditions. It throws light upon the merits of the entire case.

It suffices to say that the other grounds of the motion show no cause for a reversal of the judgment. The plaintiff with full knowledge of the facts accepted, without protest, a reduction of his salary, agreeing in writing that the amounts received were in full payment, and that the deductions were made in accordance with his written request; he had a right to waive what the law had established in his favor; and he remained in the department for two and a half years after the reduction was effective. The

evidence authorized the judgment in favor of the city; and the court did not err in overruling the motion for new trial.

*Judgment affirmed.* *MacIntyre and Guerry, JJ., concur.*