CLARK, treasurer, *v.* CLARK, sheriff.

1. The act approved September 16th, 1881 (Acts 1880-81, p. 533), in so far as it prescribes that the insolvent criminal costs of the sheriff of Richmond county may, upon recommendation of the grand jury, be paid out of any money in the treasury, is violative of art. 1, sec. 4, par. 1, of the constitution of this State (Civil Code, § 6391), which, among other things, declares that "no special law shall be enacted in any case for which provision has been made by an existing general law."

   (*a*) The cases of *Clark* v. *Reynolds*, 136 *Ga.* 817 (72 S. E. 254), and *Adam* v. *Wright*, 84 *Ga.* 720 (11 S. E. 893), distinguished.

2. The act approved March 2d, 1874 (Acts 1874, p. 365), construed in connection with existing laws, as prescribed in sections 3696, 3675, and 4631 of the Code of 1873, does not authorize the payment of "insolvent criminal costs" to sheriffs from funds in the county treasury derived from taxation.

3. Under the pleadings and evidence, the judgment granting a writ of mandamus absolute, compelling the county treasurer to pay insolvent criminal cost bills to the sheriff, was erroneous.

DECEMBER 13, 1911.

Mandamus. Before Judge Walker. Richmond superior court. June 6, 1911.

*Salem Dutcher* and *W. K. Miller,* for plaintiff in error.

*W. H. Barrett* and *E. H. Callaway,* contra.

ATKINSON, J.　John W. Clark, as sheriff, applied for the writ of mandamus to compel Walter A. Clark, as treasurer of Richmond county, to pay him out of the county funds raised by taxation the sum of $1,141.40 for "insolvent criminal costs" recommended to be paid by a majority of the grand jury of Richmond county. The treasurer resisted the application on the grounds, among others, that the plaintiff was not entitled to the relief sought. In support of his position it was insisted that a special act, approved September 16th, 1881 (Acts 1880-81, p. 533, upon which the plaintiff relied, was unconstitutional for a number of specified reasons, among them being: that it violated art. 1, sec. 4, par. 1 of the constitution, which inhibits the adoption of special laws for which there is provision by an existing general law, as set forth in section 4631 of the Code of 1873 (now embodied, in substance, in the Penal Code of 1910, §§ 1113, 1114) ; also that another special act, approved March 2d, 1874 (Acts 1874, p. 365), upon which the plaintiff relied, was not to be construed within itself, or in connection with any other statute on the subject, as furnishing grounds for the payment of the plaintiff's insolvent criminal costs

out of the general fund of the county. This act also was attacked as unconstitutional. The case was heard by the judge, under the pleadings and an agreed statement of facts; and the writ was granted. The defendant excepted.

1. The act of 1881 (Acts 1880-81, p. 533), which was attacked as unconstitutional, provided: "Whenever at any term of the superior court of Richmond county a majority of the grand jury shall so recommend, the judge of the superior court shall grant to the clerk of said court and the sheriff of said county an order upon the county treasurer for the payment of any account for insolvent criminal costs so recommended to be paid, and it shall be the duty of the county treasurer of said county to pay the same out of any money in the treasury thereof; provided, nothing in this act shall be deemed or considered mandatory to the grand jury, but they shall have full discretion to recommend or not, as they see proper, the payment of said criminal insolvent costs." This act relates to the sheriffs of one county only, and purports to make provision for payment of his "insolvent criminal costs" in a particular way. At the time of its adoption there was an existing general law which provided: "A person against whom a bill of indictment shall be preferred and not found true by the grand jury, or who shall be acquitted by the petit jury of the offense charged against him or her, shall not be liable to the payment of the costs; and in all such cases, as also where persons liable by law for the payment of the costs shall be unable to pay the same, it shall and may be lawful for the officers severally entitled to such costs to present an account therefor to the judge of the court in which the said prosecutions were depending, which account being examined and allowed by him, it shall and may be lawful for said judge, by an order of said court, to authorize and direct the sheriff or clerk to retain for his own use, and to pay to the attorney or solicitor-general, and other officers of the court, the amount of their respective accounts, out of any moneys by him received for fines inflicted by the said court, or collected on forfeited recognizances." Code of 1873, § 4631. This general law comprehended a plan for collection of "insolvent criminal costs" applicable to all the sheriffs in the State. Accordingly, the special act attempting to make provision for the collection of "insolvent criminal costs," applicable only to the sheriff of Richmond county, differing from that speci-

fied in the general law, was obnoxious to the constitution, which inhibits the passage of special laws for which provision has been made by an existing general law.  A case much in point is *Atkinson* v. *Bailey,* 135 *Ga.* 336.  In the cases of *Clark* v. *Reynolds,* 136 *Ga.* 817 (72 S. E. 254), and *Adam* v. *Wright,* 84 *Ga.* 720 (11 S. E. 893), the acts assailed were held not to be in violation of the provision of the constitution above mentioned; but each of the acts under consideration was adopted prior to the constitution of 1877, and at a time when the constitution did not contain such an inhibition.

2.  Independently of the special act of 1881, it was contended on behalf of the sheriff that under authority of a special act approved March 2, 1874 (Acts 1874, p. 365), and other laws not designated, he was entitled to have his insolvent criminal costs paid out of funds in the hands of the treasurer.  The act last mentioned was also attacked as unconstitutional; but under a proper construction of the act it does not apply to the case at hand, and accordingly the objection to the constitutionality of the act will not be considered.  The act in full is as follows:

"An act to provide the mode of fixing the pay of the sheriff, clerk of the superior court, and bailiffs, for services in said court, so. far as refers to the county of Richmond, and for other purposes.

"Section I.  Be it enacted, etc., that from and after the passage of this act, the compensation of the sheriff, clerk, and bailiffs, for services rendered in the superior court of Richmond county, shall be fixed by the judge of said court.

"Section II.  Repeals conflicting laws."

By its terms the act does no more than authorize the judge tó "fix" the "pay" or "compensation" of the sheriff for services rendered in the superior court.  Other existing laws, applicable alike to the sheriff of Richmond county and all other sheriffs of the State, provided fee bills in civil and criminal cases. · Code of 1873, § 3696.  The fees specified were thus "fixed" by law, not by the judge.  In civil cases they were payable by the parties cast in the suit.  Code of 1873, § 3675.  In criminal cases they were payable as costs by the party convicted- (Code 1873, § 4699), or, in other instances, out of the fines and forfeitures (Code of 1873, § 4631), but in no case out of the general funds of the county raised by taxation.  The special act of 1874 is to be construed in connection

with these general laws. When so construed, whatever else might be said as to what "services rendered in the superior court" the act contemplated, what compensation therefor should be "fixed" by the judge, and from what source they should be paid after being so fixed, the act is not to be construed as authorizing the judge to fix the fees to which the sheriff might be entitled as his costs, provided for in the statutory fee bill, or to order that they be paid out of the county funds. The act approved December 12th, 1862 (Acts 1862, p. 24), authorized payment to the sheriff out of any money in the treasury for summoning grand and petit jurors, and other extra services in attending upon the courts, as in the opinion of the judge might be reasonable and just; and the subsequent act approved December 13th, 1871 (Acts 1871-2, p. 51), authorized payment to the sheriff out of special taxes to be levied by the county authorities for "services in relation to which existing laws provide no adequate compensation, or no compensation at all, and in all cases in which compensation is provided to be given by order of the judge of this State," on recommendation of the grand jury, such allowance to be in lieu of all other provisions for such officer, except his "regular fees prescribed by law." This latter act was repealed by another act approved March 2, 1874 (Acts 1874, p. 365). It was contended on the one hand that the act of 1871, referred to above, repealed the act of 1862, which was mentioned; and by the opposing side that if such was the effect, the repeal of the act of 1871 by the act of 1874, last mentioned, restored the act of 1862. Whether it did or not is immaterial, and need not be considered, for the reason that neither the act of 1862 nor that of 1871 is to be construed as relating to payment of the sheriff's "insolvent criminal costs." They related to "extra services" and duties to be performed connected with the holding of the court, and are not to be construed as displacing the other statutes which prescribed fee bills for costs payable to the sheriff and the sources from which such costs were payable. Under such construction neither the act of 1874, upon which the plaintiff relies as authority for collecting his bills, nor the other statutes on the subject furnish authority for the collection of his insolvent criminal costs out of funds in the county treasury derived from taxation.

3. The bills which the sheriff sought to collect were for his

"insolvent criminal costs;" and for the reasons stated in the fore-going divisions of the opinion, his claim of right to have them paid from the funds in the county treasury derived from taxation was unfounded. Accordingly, irrespective of any other question made in the case, the judge erred in granting the writ of mandamus.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*