KEY, mayor, *et al. v.* WOFFORD *et al.*

No. 8843.   OCTOBER 12, 1932.

754

*J. L. Mayson, C. S. Winn, J. C. Savage,* and *Howell, Heyman & Bolding,* for plaintiffs in error.

*Branch & Howard* and *Bond Almand,* contra.

Per Curiam. 1. By section 215(b) of the act of 1913 amending the charter of the City of Atlanta (Ga. L. 1913, pp. 507, 599), it is provided as follows: "Whenever ten per cent. of the registered voters, as disclosed by registration sheets of the last preceding general municipal election, shall request, in a petition filed in the office of the clerk of council of said city, the submission of an ordinance

or resolution, the substance of which is incorporated in said petition, for adoption by vote of the people, an election shall be called therefor within thirty days after same has been read in council. If at said election said resolution or ordinance receives a majority of the votes cast, it shall become operative and can not be thereafter repealed except by an election similarly called. Provided, however, if the mayor and general council adopt the resolution or ordinance so petitioned for, then no election shall be called." Under a proper construction of this statute, and especially in view of the language that "if at said election said resolution or ordinance receives a majority of the votes cast, it shall become operative and can not be thereafter repealed except by an election similarly called," initiative and referendum are not provided for with respect to such a temporary administrative matter as awarding a contract for publishing legal advertisements to a particular news medium or journal for the period of one year. For this reason, and regardless of other considerations, the mayor and council properly denied a petition to call an election upon the following resolution: "Resolved that the bid of The Journal of Labor for publishing the advertisements of marshal's sales during 1932 be accepted." See, in this connection, Murphy v. Gilman, 204 Iowa, 58 (214 N. W. 679); Dooling v. Fitchburg, 242 Mass. 599 (136 N. E. 616); Brazell v. Zeigler, 26 Okla. 826 (110 Pac. 1052); McKevitt v. Sacramento, 55 Cal. App. 117 (203 Pac. 132); Monahan v. Funk, 137 Ore. 580 (3 Pac. (2d) 778); 7 McQuillin on Municipal Corporations, § 351(c). In each of the following cases cited by counsel for the defendants in error, the referendum was in reference to a matter or condition of a more or less permanent character, and those decisions are not in point: Hopping v. Richmond, 170 Cal. 605 (150 Pac. 977); State ex rel. Harlin v. Superior Court, 139 Wash. 282 (247 Pac. 4); Harbor Center Land Co. v. Richmond, 38 Cal. App. 315 (176 Pac. 50).

2. In this view it is unnecessary to determine whether the charter provision as quoted above should in all cases be limited strictly to legislative as distinguished from executive or administrative matters, or to rule upon other questions besides that referred to in the preceding note.

3. The conclusion reached in this case is not in conflict with the decision in *Green* v. *Atlanta,* 162 *Ga.* 641 (135 S. E. 84).

4. Under the above rulings, the trial court erred in overruling

the demurrer to the petition for mandamus to require the mayor and council to call the election, and for injunction against further proceedings by the city toward awarding contract for legal advertisements. The court also erred in granting the temporary injunction. *Judgment reversed. All the Justices concur, except*

Russell, C. J., dissenting. I can not concur in the reversal of the judgment of the learned trial judge in this case. As will be seen from the statement of facts, this writ of error involves a proper construction of section 215 (b) of the act of 1913 (Ga. L. 1913, p. 599), with reference to municipal initiative and referendum, and questions of validity of an ordinance adopted by the city council of Atlanta in 1927. The petitioners ask for a mandamus requiring the mayor and city council of Atlanta to call an election for the purpose of adopting a resolution awarding some of the public printing of the City of Atlanta to the Journal of Labor, a newspaper publication of that city. The petition for this election is based upon the provisions of section 215 (b) of the act of 1913, supra, which declares: "Whenever ten per cent. of the registered voters, as disclosed by registration sheets of the last preceding general municipal election, shall request, in a petition filed in the office of the clerk of council of said city, the submission of an ordinance or resolution, the substance of which is incorporated in said petition, for adoption by vote of the people, an election shall be called therefor within thirty days after same has been read in council. If at said election said resolution or ordinance receives a majority of the votes cast, it shall become operative and can not thereafter be repealed except by an election similarly called. Provided, however, if the Mayor and General Council adopt the resolution or ordinance so petitioned for, then no election shall be called." The petition also contained a prayer that the mayor and city council be restrained and enjoined from awarding the contract to the Atlanta Constitution. The city filed a demurrer as well as an answer in resistance to the grant of injunction. The judge overruled the demurrer and granted an interlocutory injunction, and to this judgment the mayor and the council excepted. The city's demurrer is based upon the ground that the petition filed with council did not comply with an ordinance of the City of Atlanta adopted in 1927, and also upon the ground that the provision for initiative and referendum supplied by the amendment to the charter of the City of Atlanta, only

has reference to legislative matters, and does not apply to administrative or executive matters. The majority of this court holds that the awarding of the city's printing is not a legislative matter, but a mere administrative matter, with which the voters of the city can not interfere by initiative or referendum.

1. This court takes judicial cognizance of the charter provisions of the City of Atlanta. Civil Code (1910), § 5797; *Central of Ga. Ry. Co.* v. *Gwynes,* 153 *Ga.* 606 (113 S. E. 183), and cit. The courts do not take judicial cognizance of municipal ordinances. *Porter* v. *Thomasville,* 16 *Ga. App.* 313 (85 S. E. 283); *Hill* v. *Atlanta,* 125 *Ga.* 697 (54 S. E. 354, 5 Ann. Cas. 614). In likening the municipality to the State, and the legislative charter by which a municipality is created to the constitution of a State, the ordinances of the municipality (which by its charter or constitution the city is empowered to pass) may well be denominated the legislative enactments of the municipality. As the legislature can not pass legislation for the State in excess of the power conferred upon the General Assembly by the constitution, semble and a fortiori a municipality can not pass an ordinance which is in excess of the powers expressly conferred by the charter granted by the General Assembly. A municipality may pass such ordinances as may be in aid of its charter powers, in order thereby to give effect to the intent of the General Assembly in the passage of the charter. But a municipal legislature can no more extend or restrict, by the passage of municipal ordinances, the charter powers which the General Assembly has conferred, than the General Assembly can amend a paragraph of the constitution by a mere legislative act. Learned counsel for the plaintiff in error, in a very correct synopsis of the questions raised by the demurrer, in his brief says: "(1) Does section 416 authorize initiative on administrative or executive matters as well as legislative matters? (2) Was this resolution with reference to matters legislative or administrative? (3) Is section 416 self-executing, and even so, have the council of the City of Atlanta the right to enact legislation so as to aid in the proper functioning thereof? (4) Was the act of 1927 a proper proceeding in aid of section 416? (5) Was the proposed resolution of such character and so complete in itself as to authorize its submission to the registered voters of the City of Atlanta?"

2. If the ordinance passed in 1927 is a proper proceeding in

758

aid of section 215 (b) of the act amending the charter of the City of Atlanta (approved August 1, 1913, Ga. L. 1913, p. 599), it would seem to follow that the petition which was presented in this case was not the petition prescribed in the amendment to the charter to which we have referred, and the clerk of the council was not required to file it, city council was authorized to disregard it, and the petitioners would not be entitled to the remedy of mandamus. So, is the ordinance of 1927 in furtherance of the intention of the legislature as expressed in 1913, or does it add further qualifications which were not imposed upon petitioners by the General Assembly, and which can not be naturally and reasonably implied from the language used in the legislative grant of power? Often a particular legislative intent may be presumed or implied, when the legislature is silent upon a particular point. But a municipality can in no case add any qualifications beyond the scope of the legislative expression. When the General Assembly completed its enumeration of the qualifications of petitioners for initiative, that subject-matter was completed, in so far as it applied to any grant of power to the city, the subordinate subdivision of the State. The subordinate subdivision, or municipality, is empowered to pass all regulations necessary to give force and effect to the legislative grant, and to carry out the wishes of the legislature, but it can not by amendment vary the power conferred, either in scope or effect.

With the foregoing well-settled rules in mind, we will now compare the provisions of the ordinance of 1927 with section 215 (b) of the act of 1913, supra. The ordinance in what we may call the preamble states that "Whereas experience has shown that in the preparation of petitions for initiating legislation it has become the practice to have them signed at various times and places, upon separate sheets and without reference to the qualifications of the signers as voters, and this has tended to cause confusion and delay in checking up the signatures: Therefore, when such petitions are hereafter prepared, same shall be filed in the office of the clerk of council, and parties desiring to sign such petition shall sign same in said office in the presence of the clerk or his deputies, and shall take the oath of a voter in the form prescribed in the present city code, and shall present a tax receipt showing their taxes paid for the previous year or make a showing that they are not subject to taxation; and petitions otherwise prepared shall not be considered

as complying with this ordinance or amendments to the charter." Had section 215(b) of the legislative act said no more than that "Whenever ten per cent. of the *qualified* voters . . of the City of Atlanta shall request, in a petition filed in the office of the clerk of council of said city, the submission of an ordinance or resolution, the substance of which is incorporated in said petition for adoption by a vote of the people, an election shall be called therefor within thirty days," etc., it would have been proper for the city council, in furtherance of the legislative act, to have imposed any qualifications the city council thought best to carry out the purposes named in the preamble. The amendment to the charter says the petitioners must be ten per cent. of the registered voters. There is no other qualification. The expression "registered voters" stands alone. The legislature then determines how it is to be ascertained who are registered voters in terms of the act—they are to be "as disclosed by registration sheets of the last preceding general municipal election." The petitioners in a petition for initiating legislation are to be ten per cent. of the registered voters, and the means provided for determining the qualification or disqualification of a voter to sign the petition are "the registration sheets of the last preceding general municipal election." The ordinance of the city council attempts to make an entirely new and different qualification for the petitioners from that imposed by the amendment to the charter. Instead of the qualification necessary to entitle a voter to be a petitioner in an initiative election being according to the will of the General Assembly and in aid thereof, the municipal legislature seeks to substitute an entirely different means of determining who shall be entitled to be petitioners for the proposed legislation. The city ordinance of 1927 does not require registration at all. Instead of this, the person desiring to sign the petition must sign in the presence of the clerk or his deputies, and take the oath of a voter as prescribed in the city code, and present a tax receipt showing payment of taxes for the previous year, etc. If not, the would-be petitioner must make a showing why he is not subject to taxation, before he is permitted to sign a petition for initiation. Had the ordinance merely required that when petitions for initiating legislation "are hereafter prepared, the same shall be filed in the office of the clerk of council, and parties desiring to sign such petition shall sign the same in said office in the presence of the clerk or his

deputies," it might well be said that this ordinance was valid and binding; for the legislature decided nothing as to where the petition should be signed, or in whose presence, and the ordinance could well be said to not be in conflict with the act of the legislature. Indeed, to use the language of the preamble, it would tend "to relieve confusion and delay in checking up the signatures." It would prevent forgeries. It would prevent fraud in the procuring of the requisite number of signatures. It would afford a means of identification which would often enable the clerk or deputy present at the signing to know whether the person signing the petition was actually a person known to the witness and one whom he knew to be a registered voter. However, it is clear that it was not within the mind of the legislature to place any other qualification upon would-be petitioners for the initiative elections provided, other than that he should be a registered voter at the time of signing the petition, and that he was registered at the time that the last general municipal election was held, and that such petitioners, as a whole, should constitute ten per cent. of those whose names appeared upon the registration sheets. If the legislature had had in mind to subject one who signed an initiative petition to prosecution for false swearing, in order to protect the purity of the ballot and prevent too frequent elections with the attendant expense and inconvenience, it would have been very easy for the General Assembly to have required each signer to take an oath, as the ordinance does. But the legislature did not do so, and the definite language in which the requirement is stated in the act of 1913, supra, forbids any implication or presumption upon the subject. Soo, too, the requirement that a voter must present his tax receipt for the preceding year unless he could show that he was not subject to tax, if it was in the legislative mind, was rejected, perhaps for the reason that a voter would be subjected, in some instances where he is not careful in preserving receipts, to great inconvenience. Moreover, a stranger who might not be liable for any taxes might perhaps be subjected to useless vexation by his present inability to produce witnesses at such time as the clerk of council or his deputies might conveniently hear evidence and determine that he was in fact not liable for taxes. A Confederate veteran or other aged voter, if personally unknown to the clerk of the council or his deputies, even though he might lawfully be a registered voter, under the requirements of

the ordinance that he make a showing that he is not subject to taxation, might be required to repeat the proof given when he registered, that he had no property and was over sixty years of age, and that he was not in any practice or business subject to occupation tax—at a time when the evidence that enabled him lawfully to register was unavailable. So I reach the conclusion that the ordinance of 1927 was not municipal legislation in aid of the act of the General Assembly amending the charter of the City of Atlanta in 1913. On the contrary, the municipal ordinance of September 20, 1927, is in conflict with section 215(b) of Ga. Laws 1913, p. 599, amending the charter of Atlanta, and therefore afforded no ground for the demurrer which was interposed as an objection to the petition.

3. It is true that in many States which have adopted the initiative, referendum, and recall, it has been held that initiative is confined to legislative matters, and does not extend to administrative or executive matters. But since Georgia law contains no provision for initiative, referendum, and recall as a statewide proposition, it is my opinion that the only question with which we are concerned is as to the regulations appertaining to the initiative, referendum, and recall within the City of Atlanta. For many years Georgia has had the referendum as to various subjects of legislation—the stock law, road law, liquor laws, school laws, etc. However, where the legislature proposes legislation subject to ratification by the people, that is a referendum, and altogether different from the initiative. The initiative is the right conferred by law upon the people of themselves to propose legislation. The right of the people to initiate action when their representatives do not— even though only a small proportion of the qualified voters are proposing it—is thus recognized by law, and the people may then adopt it, without any further legislative action, by a majority of such voters as may be fixed by the law allowing the popular initiative or proposal of a new law. Since Georgia has no general law upon the subject, the general rules pertaining to either initiative or referendum in States which have adopted these forms of legislation are not pertinent here.

The initiative provision of section 215(b) of the act of 1913, amending the charter of the City of Atlanta, draws no distinction between matters executive or administrative, and matters purely

legislative. Indeed, it may include both. The law for Atlanta says that when "ten per cent. of the registered voters, as disclosed by registration sheets of the last preceding general municipal election, shall request in a petition . . the submission of an *ordinance* or *resolution,* the substance of which is incorporated in said petition, for adoption by vote of the people, an election *shall be called,*" etc. An ordinance is something to be passed as a permanent law of the city. This would cover all forms of legislation. The General Assembly might have stopped with the word "ordinance." Then there would have been no doubt that the initiative would have been confined to mere matters of legislation. But the legislature added the word "resolution," and the meaning of that word in common parlance will include any expression or resolve upon any subject. The legislature did not add any words to restrict or confine the broad, general meaning of the word "resolution." As defined in the New Standard Dictionary, the word "resolution" means: "The act of resolving. . . 2. The purpose or course resolved upon; also, the declaration of such a purpose. . . 3. A statement, formal expression, or determination proposed, as to a corporate or deliberating body, for approval and adoption; also, a proposition adopted by such a body ;" in legislatures distinguished from a bill. According to the same authority, a resolution, in civil law, the act by which a contract was annulled. In English law, an extraordinary resolution, which requires a majority in number and three fourths in value of all creditors in bankruptcy who have proved their debts. Both in a national sense and as a matter of State history, the term "resolution" may be used and has been employed as a means of passing laws which have the same effect as if they had been proposed in a bill. In the initiative legislation proposed in this case, the petitioners asked that the people be given the opportunity to pass the resolution set forth in the statement of facts, as they were authorized to do under the plain language of the legislative act which gives a certain percentage of the registered voters the right to propose, for passage by the people, either an ordinance or a resolution.

And so I hold that under the language employed in this statute, it was the plain purpose of the General Assembly to allow the people of Atlanta, if the necessary ten per cent. of the registered voters were willing for the question to be passed upon, to have the

power to determine the question for themselves, or to express themselves upon any proposition. It will not do to say that in all city governments all executive and administrative acts will be wisely and faithfully performed. I do not hesitate to say that the voice of a majority of the people of a municipality as to a large expenditure, or a foolish expenditure, of moneys drawn from the people by taxation, is likely to be more representative of the best interest of the people than the views of some particular municipal government at some time. From the language used in the statute it is plain to me that the legislature intended to provide for any contingency, by giving the people the right to vote upon any resolution, provided it was approved by ten per cent. of the registered voters. And so I hold that "section 416 authorizes the initiative on administrative or executive matters as well as legislative matters." This renders unnecessary any answer to the second inquiry propounded in the brief and argument of learned counsel for plaintiff in error. I have already answered the third question, in holding, as I have, that the council of the City of Atlanta have the right to enact legislation in aid of the expressed will of the legislature, as expressed in the amendment to the charter. The power conveyed by section 215(b) can be well held to be full enough and plain enough to be self-executing. Nothing said in *Brooks* v. *Loganville*, 134 *Ga.* 358 (67 S. E. 940), *Cook* v. *State*, 137 *Ga.* 486 (73 S. E. 672), *Cooper* v. *Anthony*, 142 *Ga.* 692 (83 S. E. 523), *Dooly* v. *Fairmont*, 146 *Ga.* 689 (92 S. E. 209), *Brown* v. *Atlanta*, 152 *Ga.* 283, 293 (109 S. E. 666), or *Foster* v. *College Park*, 155 *Ga.* 174 (117 S. E. 84), conflicts with the views herein expressed.

4. It is insisted that the resolution submitted by the petitioners for initiative was so vague, general, and indefinite as not to present the matter for submission to the voters. I agree that any resolution permissible under the initiative should be so complete in itself as to furnish the registered voters of the City of Atlanta a plain proposition upon which they can vote intelligently. However, I think that the resolution, "Resolved that the bid of the Journal of Labor for publishing the advertisements of marshal's sales during 1932 be accepted," is in such plain words as not to be "so vague, general, and indefinite" that it fails to present a matter for submission to the voters. It is but seldom that the form in which amend-

ments to the constitution of the State, or even to the constitution of the United States, are presented otherwise than in a few words placed upon a ballot, which arrests the attention of the voter and enables him to have an opportunity to investigate himself the merits of the question to be determined by the electorate. There is in this resolution enough to enable a voter to intelligently determine whether he favors or disapproves the result indicated by the resolution, provided he inquires into the merit or demerit of the proposition by using his own powers to find out "what it is all about." Inquiry would ascertain the price of the bid, whether competitive bids were submitted, and the relative values of the advertisement of tax sales in some other paper rather than the Journal of Labor.

5. I do not think the court erred in granting the interlocutory injunction. The judge being of the opinion that a mandamus should be issued (as I think he correctly held), the failure to grant an interlocutory injunction might operate to deny to the petitioners for the initiative the right of expression accorded them by the law. The fact that the mayor and council, in obedience to the mandamus, would order the election, would not prevent further municipal action toward carrying out the contract with the Atlanta Constitution, whereby liability would be imposed upon the taxpayers of the municipality. It is true, as recently said in *Morton* v. *Waycross,* 173 *Ga.* 298 (160 S. E. 330), that "A court of equity will not interfere with the discretionary action of the governing officers of a city within the sphere of their legally delegated powers, unless such action is arbitrary, and amounts to an abuse of discretion." But this is only an exception to a general rule of equity. The general rule is that equity will intervene and interpose its strong arm to prevent wrong or preserve rights, whenever in any circumstances the rules of law are inadequate to provide a remedy. Civil Code (1910), §§ 4519, 5506. In such instances the exception must yield to the general rule. I find no error in the judgment of the lower court.