McELROY *v.* HARTSFIELD, mayor, *et al.*

No. 11942. NOVEMBER 30, 1937. REHEARING DENIED DECEMBER 15, 1937.

*Wellborn R. Ellis* and *W. D. Lanier,* for plaintiff.

*J. C. Savage, C. S. Winn, Bond Almand,* and *J. C. Murphy,* for defendants.

HUTCHESON, Justice. F. G. McElroy, a fireman of the City of Atlanta, brought his petition for mandamus, both for himself and, as the member of a class, for other firemen of the city, naming as defendants the mayor, the comptroller, the treasurer, the board of aldermen, and the board of councilmen of said city, seeking to compel the defendants to perform certain acts necessary to the payment of the salary of petitioner and other firemen, as fixed by a certain "ordinance" initiated by ten per cent. of the registered voters of said city and duly submitted and voted upon by the electorate, pursuant to the provisions of section 416 of the Atlanta City Code of 1924, codified from section 215(b) of the act of 1913 (Ga. L. 1913, pp. 507, 599) amending the charter of the City of Atlanta, which reads as follows: "Whenever ten per cent. of the

registered voters, as disclosed by registration sheets of the last preceding general municipal election, shall request, in a petition filed in the office of the clerk of council of said city, the submission of an ordinance or resolution, the substance of which is incorporated in said petition, for adoption by vote of the people, an election shall be called therefor within thirty days after same has been read in council. If at said election said resolution or ordinance receives a majority of the votes cast, it shall become operative, and can not be thereafter repealed except by an election similarly called. Provided, however, if the mayor and general council adopt the resolution or ordinance so petitioned for, then no election shall be called." It is alleged in the petition, that, beginning in 1932, the governing authorities of the City of Atlanta "adopted a policy of appropriating money to the department of fire, whereby members of the fire department were expected to make a contribution of ten per cent. of their basic pay as fixed by said city ordinance; that said policy has been adopted from year to year," including the present year, said policy being expressed in the appropriation sheet adopted by general council in January of this year in the following language: "Where apportionments for pay-rolls are specified, it provides for a ten per cent. voluntary contribution by all employees whose base pay is $100 per month, or over." The petitioner, when he was tendered his pay check for the first half of the month of April, which check disclosed a deduction of 10 per cent. from his salary as fixed by said ordinance, refused to accept the same, and brought the present action to compel payment of his salary as fixed by said ordinance for the month of April, and to compel acts on the part of the city officials named as defendants as would result in the payment of salary for such future months as he might remain employed as a city fireman, and so long as said ordinance remained of force and effect. The same relief was prayed for as to other members of the fire department of the City of Atlanta. To this petition the defendants filed demurrers both general and special. The court sustained the general demurrers and dismissed the petition. The petitioner excepted.

As we view the case, it is only necessary to deal with one ground of the general demurrer which we are of the opinion was a sufficient reason for the dismissal of the case. That ground is that the "ordinance" fixing the pay of firemen of the City of Atlanta "is

not such an ordinance as may be adopted under the initiative provisions of the charter of the City of Atlanta." Let it be said here that we are not concerned in the instant case with whether the making of provision for the salaries of firemen is a legislative, administrative, executive, or quasi-judicial function, or whether, if it be one or the other, the ordinance fixing such salaries is for that reason such an ordinance as is or is not contemplated or provided for under the initiative provisions of the charter. Cf. *Key* v. *Wofford,* 175 *Ga.* 749 (166 S. E. 204). Numerous authorities from foreign jurisdictions are cited in this connection by both sides to the controversy. They are of no useful purpose, however, in the decision to be rendered in the instant case, and will not be discussed.

The initiative provision of the charter provides "for the submission of an ordinance or resolution the substance of which is incorporated in said petition [of ten per cent. of the registered voters] for adoption by vote of the people." The statute does not in and of itself place any restriction upon the subject-matter of such ordinance or resolution. We are of the opinion, however, that this provision of the charter should be interpreted in the light of other provisions of the charter in force and effect at the time of the passage of the amendment to the charter by the legislature, and that when this is done certain restrictions upon the subject-matter of such ordinances or resolutions becomes very apparent. The charter of the City of Atlanta then in force and effect provides that after the tax-assessors have made their return, the mayor and council "shall cause an estimate to be made up and entered on the minutes, showing the gross amount of the income of the city for the fiscal year, ascertained by the assessment of a tax not exceeding one and one half per cent. on the taxable property of the city, and a reasonable estimate of other sources of revenue." (Atlanta City Code of 1924, § 157, codified from Ga. L. 1874, pp. 116, 124, § 35). "And shall apportion and set apart the same to such departments and to such number of departments or heads as may be deemed requisite and as shall be provided by ordinance, and the name, number, and order of departments or heads for appropriations may be changed by ordinance; which said several sums taken in the aggregate shall not exceed the amount of income from all sources for the year in question." Atlanta City Code of 1924, § 158, codified

from act of 1874, supra, as amended by § 10 of the act of 1889 (Ga. L. 1889, pp. 811, 816). The charter further provides that "No money shall be appropriated from the city treasury, except by resolution of the council and aldermen, as herein provided." (Atlanta City Code of 1924, § 160, codified from the act of 1874, supra), and "The annual expense of the City of Atlanta shall be so restricted as not to exceed the annual income of the city, after paying interest on its bonds and floating debt . ." (Atlanta City Code of 1924, § 166, codified from the act of 1874, supra), and also that "The said mayor and members of council and aldermen shall be individually liable to the city for the refunding of any amount appropriated or expenses incurred in excess of said limits, . ." (Atlanta City Code of 1924, § 161, codified from the act of 1874, supra). By these provisions of the charter the legislature had set up a system of fiscal management of the City of Atlanta, and placed the duties involved in such management upon the mayor and council of the city. After ascertaining the prospective income of the city, the duty is placed upon the mayor and council to apportion such income to the various departments, and enjoins the mayor and council in so doing from exceeding the anticipated income as previously ascertained, under penalty of personal liability for any excess. How much of the aggregate income shall be appropriated to any individual department, and for what purposes, is a duty expressly placed upon the mayor and council. The proper exercise of such duty necessarily involves, first, an investigation of facts and information pertaining to the needs of a particular department in relation to needs of other departments, with due regard to the prospective income of the city; and second, the exercise of a sound discretion and judgment based thereon. The exercise of this discretion and judgment is expressly placed upon the mayor and council, and they alone are made personally responsible for any failure to perform this duty, or for so negligently failing to exercise their discretion and judgment as to expend more than the income of the city for any fiscal year. Under these charter provisions the mayor and council, and they alone, are to determine the amounts to be appropriated to the various departments, and must do so in such manner and amounts as will most efficiently operate the various departments without exceeding the income of the city.

By the act of 1933 (Ga. L. 1933, p. 851; Atlanta City Code, § 174(a)), the charter of the City of Atlanta was amended as follows: "In addition to existing provisions of the charter of said city, there is hereby created a budget commission, consisting of the mayor, comptroller, chairman of the finance committee, and two other members of the general council. . . Such budget commission shall, on or before the first Monday in December of each year, estimate the amount of the receipts of the City of Atlanta from all sources for and during the following year. . . Said budget shall be presented to the general council on the first Monday in December of each year, and shall thereupon be referred to the finance committee, and this committee shall report said budget or an amended budget back to the council at the next regular meeting, or at a called meeting before the next regular meeting. The finance committee shall have the right to recommend changes, and the general council shall have the right to adopt amendments to said budget as so prepared, but they shall make no changes in the estimated receipts set up in the tentative budget by the budget commission, *nor shall they make any appropriations in excess of the estimated receipts so prepared.* Said budget commission shall have the right at any time, within their discretion, to reduce or increase the estimated receipts and appropriations. The general council shall have the right to make transfer of funds from one department to another, or from one division of a department to another in the same department, just as now provided. The general council shall not entertain a motion, resolution, or ordinance increasing the receipts as estimated and presented by the budget commission. If same is attempted, any effort therefor shall be void, and the comptroller is forbidden to recognize such action and prepare vouchers thereon. The members of the budget commission shall be personally liable for over-anticipation of receipts, in the same manner as now provided by law for members of general council; and the members of the general council are relieved from such liability. The charter provisions with reference to the finance sheet so-called, or preparation of estimates of receipts and expenditures for current year, are hereby amended so as to conform to the foregoing. Where there is any conflict with the present provisions of the charter and the provisions of this section, the latter shall prevail." The above amendment to the charter carried forward,

in its fundamental aspects, the plan of fiscal management previously provided for; that is, that no one year's expenditures should exceed that year's income. The financial responsibility for over-anticipation of receipts, and the performance of certain duties, were placed upon the budget commission. With these provisions of the charter in mind, let us examine into the subject-matter of the ordinance in question, and see if such subject-matter is in keeping with the provisions of the charter relating to income and expenditures. The ordinance is one fixing the salaries of a group or class of municipal employees or officers.

If, through the initiative provision of the charter, the people of the City of Atlanta are allowed to fix the salaries of so large a portion or class of municipal employees or officers as city firemen, there would be no reason why they should not also be allowed, through the same procedure to fix the salaries of all other classes of municipal employees or officers whose salaries are not otherwise fixed by law. And if, as the charter provides, the ordinances fixing such salaries could not be repealed except by an election similarly called, the municipal officers upon whose shoulders is placed the duty of appropriating such portion of the yearly income to the various departments as they see fit, and whose mandatory duty is to keep expenditures thus made within the income, and who are personally liable for failure to so restrict expenditures, would be helpless to comply with the mandatory provisions of the charter in this regard, if in some particular year the income did not warrant the expenditures fixed by the people. Nor would they, in any year, be permitted to exercise the discretion and judgment expressly required of them under the charter. Did the legislature, by the passage of the amendment to the charter of the City of Atlanta relating to initiative and referendum of the ordinances or resolutions initiated, intend to permit the electorate by the use of such procedure in the passage of ordinances or resolutions, to compel the payment of moneys from the treasury, or to permit more or less permanent appropriations to be fixed, in excess of the income of the city, and thus in effect allow the electorate to repeal or modify the provisions of the charter relating to the fiscal management of the city? To so hold would place it in the power of the electorate, in their discretion, to disrupt and destroy the system of fiscal management set up by the legislature for the City of Atlanta, and by

their acts force an excess of expenditures over income, when the electorate are in nowise themselves under any official responsibility; and we would in effect hold that the legislature delegated to the electorate the power to repeal or modify statutes enacted by the legislature, upon their own initiative. Did the legislature, however, by the act itself, intend to repeal or modify the provisions then in effect relating to the fiscal management of the city; and did it in effect say that if the people of the city fix the salaries of city employees or officers not otherwise fixed by law, it shall be the duty of the fiscal managers to pay such salaries, regardless of how such duty might interfere with the duties and inhibitions *expressly* placed upon them by the charter provisions then in existence? To answer this question in the affirmative would be to say·that there was a repeal or modification, but that the extent of such repeal or modification is dependent upon the changing will of the people, in that they may modify these mandatory provisions of the charter one year, and make them entirely effective the next, even as regards the same subject-matter of expenditures. We fail to see how it is possible for this court to say that the legislature intended to repeal or modify a previous act, unless from the acts themselves the extent of the repeal or modification can be determined and defined.

It may be argued that the provisions relating to fiscal management are not always mandatory, for the reason that the charter fixes certain expenditures to be made, such as the salaries of certain major officials of the city. These, however, are provisions of the charter, and not ordinances; they are the expression of the legislature, and are a part of the whole acts of incorporation. Necessarily, then, they must be given effect as a part thereof, and as a consequence such salaries fixed by the legislature would come without the charter provisions relating to fiscal management in so far as the discretion of the managing officials may be concerned in providing for the payment thereof. Therefore the extent of modification may be determined from the acts or parts of the acts themselves. This is not so as to potential ordinances fixing salaries of municipal employees or officers; there the extent of modification would depend, not upon legislative enactment, but upon the changing will of· the people which potentially might totally destroy the system of fiscal management set up by the legislature. We can not believe that the provisions relating to initiative and referendum

were ever intended by the legislature to serve such a purpose. In view of the other portions of the charter of the City of Atlanta heretofore discussed, there is no doubt in our minds that the legislature, by the passage of the initiative provisions of the charter, did not intend to permit the electorate, by the passage of ordinances or resolutions pursuant to such initiative provision, to repeal or set at naught the other provisions of the charter, or to pass ordinances or resolutions which, if enforced, would have that effect.

In passing on the question presented, and in the ruling made, we did not concern ourselves with whether or not the passage of the particular ordinance or resolution in the instant case would, in and of itself, by effecting an excess of expenditure over income, nullify the provisions of the charter confining expenditures within income. Such fact, if it appear, is to be considered in determining whether an ordinance otherwise valid is unreasonable in its operation under the particular facts presented. See *Green* v. *Atlanta,* 162 *Ga.* 641 (135 S. E. 84) ; *Barfield* v. *Atlanta,* 53 *Ga. App.* 861 (187 S. E. 407). In the *Green* case an ordinance similar to that involved in the instant case was, under the evidence then before the court, declared to be reasonable. In the *Barfield* case under the evidence then adduced, a contrary result was reached, and the ordinance was declared unreasonable and unenforceable. It may be argued that we should in this case let it be determined whether the ordinance is reasonable or unreasonable under the facts as may be presented upon a trial of the case. Must the city fathers each year, depending upon the financial condition of the city, either pay the salaries fixed by the ordinance, or hie themselves to court and let the court determine whether, in view of the financial condition then existing, the ordinance is unreasonable? Must they be faced each year with the possibility of a court action to prevent the city from going into debt? The fact that such a situation exists and has existed (*Green* v. *Atlanta; Barfield* v. *Atlanta,* supra) argues well for the position we have taken. We have concerned ourselves here with the potential effect of ordinances of the subject-matter of that in the instant case. The statute providing for initiative by the registered voters dealt with potentialities, and this court in construing the statute has, we think, properly done likewise, and in so doing has reached the conclusion that the subject-matter of the ordinance is not such as is provided for in the

initiative provisions of the charter of the City of Atlanta. The ruling in the second division of the opinion in *Green* v. *Atlanta, supra*, has no bearing on the instant case, and the rulings herein made. In that case the ordinance was attacked on the grounds that section 215(b) of the act amending the charter of the City of Atlanta "is void, because it undertakes to delegate legislative authority to the people at large, and not to elected representatives forming a body legislative in character." Section 215(b) provided for submitting to the people the question of incorporating into the charter of the city the principle of initiative, referendum, and re-call. This particular portion of the amendment of the charter was italicized in the statement of facts. All that was decided in that case, under the construction therein placed on the above-quoted contention, was that a legislative body could pass a law and present it to the people for approval or rejection. No such question is presented in the instant case, and nothing is here decided as to the constitutionality of either the act or the ordinance. The sole question decided here is that the legislature, by the act amending the charter of the City of Atlanta, and section 215(b) thereof, did not provide for initiative and referendum with respect to such ordinances of the subject-matter of that in the instant case.

The ordinance, for the reasons given herein, being invalid, constitutes no foundation for any right to the salaries fixed thereby. It follows that the petition for mandamus, predicated upon the alleged right to the salaries fixed in said ordinance, fails to show a right thereto; and the court did not err in sustaining the demurrer and dismissing the action. *Houston County* v. *Killen,* 76 *Ga.* 826 (1, 4); *Binns* v. *Ficklen,* 130 *Ga.* 377 (60 S. E. 1051); *Clark* v. *Hammond,* 134 *Ga.* 792 (68 S. E. 600); *Atkinson* v. *Bailey,* 135 *Ga.* 336 (69 S. E. 540); *Clark* v. *Clark,* 137 *Ga.* 185, 189 (73 S. E. 16). Whether the petitioner and other firemen of the City of Atlanta may recover on a quantum meruit for the value of the services rendered is not a question presented for decision.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, P. J., who dissent.*

Russell, Chief Justice, dissenting. I regret that I can not concur in the decision and opinion presented for adoption. In 1913 the City of Atlanta procured the passage by the General Assembly of Georgia of "An act to amend an act establishing a new charter

for the City of Atlanta, approved February 28, 1874, and the several acts amendatory thereof, and for other purposes." This act establishing a new charter is exhaustive of nearly any imaginable contingency which would require action on the part of the municipal corporation to which it was granted. So much so that it includes ninety-eight pages (507-604). The acts follow a prelude, which I quote: "Whereas the present charter of the City of Atlanta contains many obsolete provisions and others whose purposes have been executed, and furthermore requires amendment in many particulars: Therefore be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same, that the act establishing a new charter for the City of Atlanta, approved February 28, 1874, and the several acts amendatory thereof, be and the same are hereby amended as follows:" It is not necessary for present purposes to refer to the first 214 sections, but in this act of the legislature it is provided in section 215(b) that "Whenever ten per cent. of the registered voters, as disclosed by registration sheets of the last preceding general municipal election, shall request, in a petition filed in the office of the clerk of council of said city, the submission of an ordinance or resolution, the substance of which is incorporated in said petition, for adoption by vote of the people, an election shall be called therefor within thirty days after same has been read in council. If at said election said resolution or ordinance receives a majority of the votes cast, it shall become operative and can not be thereafter repealed except by an election similarly called. *Provided,* however, if the mayor and general council adopt the resolution or ordinance so petitioned for, then no election shall be called." There are subsequent provisions of the charter referring to initiative and referendum elections held at the same time as regular municipal elections, which, however, are not pertinent here. This court held, in *Green* v. *Atlanta,* 162 *Ga.* 641 (supra), in which attorneys of the City of Atlanta appeared for the purpose of upholding the ordinance now before this court for consideration: "1. The court did not err in holding section 1 of the ordinance in question to be valid as against the contention that it is void because unreasonable. 2. The court did not err in holding the ordinance and election held thereunder valid as against the contention that they were void because based on an unconstitutional statute—

that the statute was unconstitutional on the ground that a referendum is contrary to a republican form of government. This question can not be determined in a court of equity, and is not a justiciable question; on the contrary, it is a matter to be determined by the legislature. 3. Section 215(b) of the act amending the charter of the City of Atlanta is not void on the ground that it deprives the plaintiff of 'due process of law.' 4. The court did not err in rendering a judgment holding said section of the ordinance valid as against article 3, section 7, paragraph 8, of the constitution of Georgia (Civil Code, (1910), § 6437), which provides: 'No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof.' 5. The court did not err in holding the second section of the ordinance invalid on the ground that the mayor and council were without authority to abandon or surrender the power conferred on them."

In the course of the opinion Mr. Justice Gilbert, speaking for the entire court, said: "2. The next contention is that the ordinance and the election held thereunder are void, because the same are based on a void act of the legislature; that section 215(b) of the act amending the charter of the City of Atlanta is void, because it undertakes to delegate legislative authority to the people at large, and not to elected representatives forming a body legislative in character. As we construe this contention, it is similar to the contention made in Pacific States Telephone &c. Co. v. Oregon, 223 U. S. 118 (32 Sup. Ct. 224, 56 L. ed. 377). The attack in that case was on the statute passed by the legislature of the ·State of Oregon and submitted for approval to a popular vote of the people of that State; thus the question was as to the constitutionality of what is known as the 'initiative and referendum.' The opinion was written by Mr. Chief Justice White, and the opening sentences of the opinion are as follows: 'We premise by saying that while the controversy which this record presents is of much importance, it is not novel. It is important, since it calls upon us to decide whether it is the duty of the courts or the province of Congress to determine when a State has ceased to be republican in form and to enforce the guarantee of the constitution on that subject. It is not novel, as that question has long since been determined by this court conformably to the practice of the govern-

ment from the beginning to be political in character, and therefore not cognizable by the judicial power, but solely committed by the constitution to the judgment of Congress.' In the case of Kiernan *v.* Portland, 57 Ore. 454 (111 Pac. 379, 112 Pac. 402, 37 L. R. A. (N. S.) 332), will be found an elaborate discussion of the question, in which many authorities are cited. Thus it will appear as well settled, that the question of the power of a State or municipality to submit a referendum like that indicated in section 1 of the ordinance is not a justiciable question, but rests solely within the wisdom and judgment of the legislative branch of the government. As to the wisdom and desirability of such legislation, the courts have no concern. In the language of Mr. Justice Brewer: 'Here the single question is one of power. We make no laws. We change no constitutions. We inaugurate no policy. When the legislature enacts a law, the only question we can decide is, whether the limitations of the constitution have been infringed upon.' . . . Instances of such delegation of power are found in our local option and fence laws, numerous municipal charters submitted both as a whole and as to separate parts, road laws, change of county site, the issuance of bonds, the formation of school districts, the levy of school tax, and the like. The constitution of Georgia declares (article 1, section 1, paragraph 1, Civil Code (1910), § 6357: 'All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.' Again, in section 5 of the same article, paragraph 1, it provides: 'The people of this State have the inherent, sole, and exclusive right of regulating their internal government.' Civil Code (1910), § 6393. . . This court has said: 'Under our form of government, where the people rule, and where the representatives in the legislature are but the agents of the people and act alone for them, it would seem that, when the wishes of the people as to whether a proposed act should become a law can be clearly ascertained by an election, this mode would be consonant with the genius and form of our government. The fundamental law of the State, and even particular sections thereof, is, and has been, left to be determined by a vote of the people. If the constitution, the organic law of the State, has been made to depend upon the vote of the people, it is not easy to perceive why a local law, an act affecting a particular community, should not be determined by a vote of

the people of that locality. It has been the practice in this State for more than half a century to leave local questions, such as the location of county sites, the building of public houses, municipal charters and amendments thereof, to the vote of the people to be affected thereby. Such laws have never been thought to be unconstitutional. See Cooley, Const. Lim. 748, 749.' *Caldwell* v. *Barrett, 73 Ga.* 604. Decisions of other States apparently taking a contrary view are generally found to concern facts of a different nature, and falling within the second classification above stated. At any rate, they are not binding authority here.

"3. It is also contended that section 215(b) is void, because it is in conflict with article 1, section 1, paragraph 3, of the constitution of the State of Georgia (Civil Code (1910), § 6359), which provides: 'No person shall be deprived of life, liberty, or property, except by due process of law.' . . The act is not open to this objection. . .

"4. It is also contended that section 215(b) of the act is unconstitutional and void, because it violates article 3, section 7, paragraph 8, of the constitution of Georgia (Civil Code (1910), § 6437), which provides: 'No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof.' The title of the act is as follows: 'An act to amend an act establishing a new charter for the City of Atlanta, . . and the several acts amendatory thereof, and for other purposes.' We do not think the act subject to this criticism. In a long series of decisions, beginning at a very early date, this court has decided that all doubts as to the constitutionality of an act will be resolved in favor of its validity, and also that under the usual caption to acts providing for municipal charters, such as the one now under consideration, great liberality is to be allowed, and the legislation may include any provisions in the act which are germane to the general subject embraced, and this would include any matters within the usual powers conferred upon a municipality. *Allen* v. *Tison,* 50 *Ga.* 374; *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795, 804 (36 S. E. 247); *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871 (40 S. E. 1004, 57 L. R. A. 230); *Welborne* v. *State,* 114 *Ga.* 793, 821 (40 S. E. 857); *Oglesby* v. *State,* 121 *Ga.* 602 (49 S. E. 706); *Town of Poulan* v. *A. C. L. R. Co.,* 123 *Ga.* 605 (4) (51 S. E. 657); *Banks* v. *State,* 124 *Ga.*

15 (52 S. E. 74, 2 L. R. A. (N. S.) 1007) ; *City of Cartersville* v. *McGinnis,* 142 *Ga.* 71 (82 S. E. 487, Ann. Cas. 1915D, 1067)." It is true this court held that section 2 of the ordinance was invalid, because it was delegation of power to the Federal government to fix the salaries of firemen, which was ultra vires; but that does not affect a proper ruling in the case at bar.

The case of *Nance* v. *Key,* 183 *Ga.* 244 (188 S. E. 32), in which this court affirmed a judgment dismissing the action on general demurrer, is not at all in point in the consideration of the case now before us. The petition was brought by Steve Nance and J. A. Harper in an effort to enforce the provisions of the ordinance voted on by the qualified voters of Atlanta on December 2, 1925 (the same ordinance which it is sought to enforce in the case at bar), fixing the pay of firemen in the City of Atlanta. It was agreed that all issues of fact as well as of law be passed upon by the trial judge. Though the defendants filed an answer and much evidence was introduced both by the plaintiff and the defendant, the court finally sustained demurrers to the petition and dismissed the action. As it appeared from the petition that neither of the plaintiffs was a member of the fire department of Atlanta, this court held that the judge correctly sustained the demurrers, because the "rights claimed under said alleged ordinance, which is relied upon, are private rights vested solely in the individual members of the fire department, and any right of action that might exist to compel performance under said ordinance accrues solely to the individual members of the fire department. If any duties are created under said ordinance, such duties are private and not public, and therefore plaintiffs, having no special interest in the enforcement of said ordinance, and having suffered no pecuniary loss on account of the alleged failure of the defendants to comply with said ordinance, have no right of action against these defendants or either of them for the relief prayed." As related to the General Assembly of the State, a municipal corporation stands in the same position that the General Assembly occupies in regard to the constitution of the State, and in the construction of legislative enactments the same rule must be applied where the acts of municipal corporations are under consideration. There can be no repeal of a charter provision by implication, except where a later act expressly contradictory upon the same subject has been

enacted (*Swinson* v. *Dublin*, 178 *Ga.* 323, 173 S. E. 93), and there has been no legislative enactment subsequent to the act of 1913 which I can find which expressly repeals the provision relating to initiative and referendum applicable to the fire department of the City of Atlanta. It is a general principle that repeals by implication are never favored; and this will be particularly true in a case where one is required, either voluntarily or by means approaching duress, to contribute to the foundation of a fund for a common purpose to which he, in conjunction with the city, contributed. See *Trotzier* v. *McElroy*, 182 *Ga.* 719 (186 S. E. 817).

In the proposed opinion it is said that "it is only necessary to deal with one ground of the general demurrer. . . That ground is that the ' ordinance ' fixing the pay of firemen of the City of Atlanta ' is not such an ordinance as may be adopted under the initiative provisions of the charter of the City of Atlanta.' " It is further said, in substance, that we are not concerned whether the making of provision for the salaries of firemen is a legislative, administrative, executive, or quasi-judicial function. Further it is said that where there is any conflict with the present provisions of the charter and the provisions of this section, the latter shall prevail.' The quotation embodied in the opinion is taken from an amendment to the charter of the City of Atlanta passed in 1933. Read in connection with its context, it must be construed as a statement that the initiative and referendum provisions of the far more exhaustive amendment of the city charter of 1913 are abrogated, destroyed, and repealed by implication, and in consequence the decisions of the Supreme Court to which reference has been made are of no further value. I can not concur in the opinion that even a subsequent act of the General Assembly can lawfully destroy inherent rights which have been conferred by the law-making power, whereby payment of just obligations for which value has been received can be arbitrarily and ruthlessly evaded by the destruction of contractural rights. Such an act would be violative of the provisions of both the State and Federal constitutions inhibiting the passage of laws impairing the obligations of contracts. Constitution of Georgia, article 1, section 3, paragraph 2 (Code of 1933, § 2-302); Constitution of the United States, article 1, section 10, paragraph 1 (Code of 1933, § 1-134). Before I could concur in the opinion as presented, I should have to agree to the

proposition that courts are empowered to pass legislation which they think is better for those affected than that which the legislature was empowered to pass, and disregard the language of Mr. Justice Brewer, as quoted by Mr. Justice Gilbert in the *Green* case, supra: "Here the single question is one of power. We make no laws. We change no constitutions. We inaugurate no policy. When the legislature enacts a law, the only question we can decide is, whether the limitations of the constitution have been infringed upon." Before I could concur in the opinion, I should have to bring myself to the point of overruling the decisions of this court in *Green* v. *Atlanta,* 162 *Ga.* 641 (supra), and *Trotzier* v. *McElroy,* 182 *Ga.* 719 (supra), without there ever having been a motion made up to this time to overrule these decisions, which can not be overruled except by the concurrence of all the members of this court. Before I could concur in this opinion, I would have to forget the provisions of the constitutions of Georgia and of the United States which protect contract rights from violation. As I am unable to concur in either of these propositions, I find myself obliged, by my oath of office, to dissent.